Charles SCHIFANO, Kenneth Allen, Arden Barnett, Keith Harvey, Gerald Cutright, Ralph Cutright, Ward Hetrick, Chester Kisner, Lee McFann, George Miker, Steve Miker, Wayne Musgrave, Ralph Nethken, Stanley Slaughter, John Tichenor, Charles Trippett, and Jerry Hawkins, Plaintiffs,

v.

UNITED MINE WORKERS OF AMERICA 1974 BENEFIT PLAN AND TRUST, Defendant.

No. 83-0264-C(K).

United States District Court,
N.D. West Virginia,
Clarksburg Division.

Feb. 23, 1987.

Timothy J. Manchin and Michael John Aloi, Fairmont, W.Va., for plaintiffs.

William F. Hanrahan, UMWA Health & Retirement Fund, Gen. Counsel, Washington, D.C., Mike Magro, Jr., Morgantown, W.Va., for defendant.

## MEMORANDUM OPINION

KIDD, District Judge.

Pending before the Court are cross-motions for summary judgment filed by the parties. The underlying material facts of this action are not disputed. The only issue to be decided is one of law. Therefore, this action is ripe for summary judgment.

The plaintiffs in this action are retired coal miners who were former employees of South Union Coal Company and pensioners under the United Mine Workers of America ("UMWA") 1974 Pension Plan. The defendant is the UMWA 1974 Benefit Plan and Trust ("BP & T"), one of four separate employee benefit plans collectively referred to as the UMWA Health and Retirement Funds ("Funds").

The 1974 BP & T, originally provided health and other non-pension benefits ("health benefits") to all 1974 Pension Plan pensioners. Under the National Bituminous Coal Wage Agreement ("Wage Agreement") of 1978, however, the bargaining parties agreed that each signatory employer was required to provide health benefits to the 1974 Pension Plan pensioners, for whom it was the last signatory employer. 1978 Wage Agreement, Article XX(c)(3)(i). The 1981 Wage Agreement continued this arrangement. 1981 Wage Agreement, Article XX(c)(3)(i).

The 1974 BP & T continued to exist after the 1978 and 1981 Wage Agreement, for the sole purpose of providing health benefits only to eligible 1974 Pension Plan "orphan" pensioners who ceased to receive those benefits because their last signatory employer was "no longer in business." 1978 and 1981 Wage Agreements, Article XX(c)(3)(iii). The 1981 Wage Agreement, however, included a definition of "no longer in business"

... For purposes of determining eligibility under the 1974 Benefit Plan and Trust, an Employer is considered to be "no longer in business" only if the Employer:

a. has ceased all mining operations and has ceased employing persons under [the 1981 Wage Agreement], with no reasonable expectation that such operations will start up again; and

b. is financially unable (through either the business entity that has ceased operation as described in subparagraph (a) above, including such company's successors or assigns, if any, or any other related division, subsidiary, or parent corporation; regardless of whether covered by [the 1981 Wage Agreement or not]) to provide health and other non-pension benefits to its retired miners and surviving spouses.

1981 Wage Agreement, Article XX(c)(3)(iii).

Being a signatory employer to the 1978 and 1981 Wage Agreements, South Union

provided health benefits to the plaintiffs, who are 1974 Pension Plan pensioners. On June 26, 1981, South Union was granted a Chapter 11 bankruptcy. The company operated under Chapter 11 through August 1, 1981, at which time all employees were laid off. As of that date, the company was "no longer a going concern" according to the defendant's auditor, who further stated:

> The company appears to have no financial ability to pay any health benefits to those employees who are eligible to receive such benefits under the 1974 Benefit Plans and Trusts inasmuch as the company has sold their major assets and, after a complete dissolution is final, the proceeds will not cover the amount due creditors.

Defendant's Exhibit G at page 5. South Union ceased paying, in June 1981, its health insurers for health benefits for the plaintiffs. South Union went into Chapter VII liquidation in November 1981, and was eventually liquidated.

Effective November 25, 1981, defendant issued health cards to the plaintiffs under the 1974 BP & T. Subsequently, the Board of Trustees of the Funds voted, with Chairman Combs dissenting, to terminate the health cards issued to the plaintiffs and to collect from the plaintiffs all health benefits paid since November 25, 1981. The trustees ruled "that South Union Company does not satisfy the definition of 'no longer in business' of Article II, E. 4 of the 1974 Benefit Plan because its parent corporation which owns 100% of the stock of South Union, is not financially unable to provide benefits." Defendant's Exhibit H.

Article II. E. (4) of the 1974 BP & T (1981) incorporates the definition of "no longer in business" found in the 1981 Wage Agreement. Said definition is referenced in Article II A(1) which provides health benefits to pensioners under the BP & T whose last signatory employer is no longer in business.

The trustees based their decision upon the opinion of the manager of the eligibility special programs office. Said opinion was based solely on the fact that all of South Union stock was owned by another compa-

ny, United Real Estate ("Unity"), which is still in business. Since the sole stock owner of the dissolved coal company was a corporation still in business, it was not financially unable to provide health benefits. Therefore, the plaintiffs failed to meet the second prong of the "no longer in business" definition of Article II E(4)(b).

The plaintiffs claim that the action of the trustees was arbitrary and capricious in their interpretation of the "no longer in business" definition. Plaintiffs argue that the "no longer in business" requirement is satisfied and therefore plaintiffs are eligible for health benefits. Alternatively, plaintiffs argue that defendant should have granted plaintiffs the health benefits and then commenced legal action against Unity for subrogation, if Unity was financially able to provide benefits.

Defendants claim that the trustees' decision is supported by substantial evidence and in accordance with the BP & T. Defendants argue the only inquiry is whether the parent corporation is financially able to provide health benefits regardless of whether the parent corporation has any legal obligation to do so. In fact, the defendants state that Unity has no contractual duty to provide health benefits to the plaintiffs because it was not a signatory to the 1981 Wage Agreement. However, since Unity is an active corporation, the plaintiffs are not eligible for health benefits from the BP & T, even though Unity has no obligation to provide benefits.

In reviewing the decision of trustees to deny benefits, a federal court is limited to determining whether the trustees' action was arbitrary or capricious. *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003 (4th Cir.1985); *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197 (4th Cir.1984). Under this standard, the court must determine whether the decision of the trustees was supported by substantial evidence and whether they have made an erroneous decision on a question of law. *See LeFebre, supra*, at 204. If the trustees' decision is based upon substantial evidence and is not arbitrary and capricious, then that decision is not to be disturbed. *Id.* at 208.

The Court believes that the facts of this case are clear. The exhibits filed herein reveal no genuine issue as to any material fact. It would appear that the only issue in this case is one of law, namely, the interpretation of the 1974 BP & T as amended by the 1981 Wage Agreement.

■ The first step in interpreting the BP & T is to look at the purpose behind it.

Coal operators for many years have agreed to pay and have paid health benefits to miners. Prior to 1978, coal operators provided health benefits through an industry-wide trust fund. In a historic development in 1978, each company signatory to the 1978 collective bargaining contract agreed to provide benefits through its own insurance carrier rather than through a trust fund. Virtually the same agreement was executed in 1981 and 1984 during the periodic renegotiation of the expired contract.

*Dist. 17 v. Allied Corp.*, 765 F.2d 412, 420 (4th Cir.1985). However, the BP & T remained as a safety net to provide health benefits to orphan pensioners not covered by some other plan. As stated by Judge Chapman in his dissenting opinion in *Dist. 17 v. Allied Corp., supra* 421, which was originally the majority opinion of the original three-judge panel, reported at 735 F.2d 121, at 130–31:

The record clearly shows that this trust was created to provide for retired miners who became "orphans" by not being covered under some other plan. During negotiations preceding the 1978 Wage Agreement, BCOA tried to eliminate the 1974 Benefit Plan and Trust, but UMWA insisted that the 1978 Wage Agreement continue contributions to the 1974 plan to provide benefits to pensioners, who would otherwise lose benefits when benefits were changed from a multi-employer plan, covering all active and retired miners, to an individual company plan. As a result of collective bargaining the 1978 Wage Agreement provided for a continuation of payments by the employers into the 1974 plan for the purpose of providing for retired miners not covered by some other plan. This trust is the safety

net intended to catch the plaintiffs, and it may not be removed by the trustees, now that it is needed.

The plaintiffs in the case at bar are orphan pensioners for which the BP & T was created. The plaintiffs, being pensioners under the 1974 BP & T, received health benefits from South Union under the 1978 and 1981 Wage Agreements. South Union, in 1981, went into Chapter 11 bankruptcy, then into Chapter 7, and eventually was liquidated. The plaintiffs have no right to seek their health benefits from the stockholder of the now defunct South Union. Their only alternative is to turn to the 1974 BP & T, for the very purpose justifying the 1974 BP & T's existence.

The trustees, as aptly put by the plaintiffs' counsel in their brief,

... have interpreted this section to mean that whenever there is a parent corporation who has not been proved to be financially unable to provide health and other non-pension benefits, then the pensioners are ineligible to receive benefits from the Fund, regardless of the fact that there may be no legal responsibility or liability on the part of said parent corporation to pay said benefits. This is merely looking for any way possible to protect and preserve the trust fund and deny benefits to pensioners who have worked and toiled over long years for their health card benefits. These pensioners who have counted and relied upon these benefits in order to enjoy the twilight years of their life, are suddenly faced with the arduous, if not impossible, (i.e. in light of present illnesses) prohibitively expensive task of obtaining health care coverage. Not since the days of Pontius Pilate have the dirty hands of the innocent's delivery been so perfunctorily washed.

Plaintiffs' Memorandum, pages 10–11. *See*, Defendant's Memorandum, pages 9–12; Deposition of Trustee O'Connell, pages 35–36.

The Court believes, as did the court in *Maggard v. O'Connell*, 671 F.2d 568 (D.C. Cir.1982) that the trustees are preserving the corpus of the trust at the expense of the intended beneficiaries, the plaintiffs.

The Court is of the opinion that the trustees clearly erred in their interpretation of the second prong of the "no longer in business" definition.

The second prong of the "no longer in business" definition refers to the financial ability of the employer to pay the health benefits. Implicitly implied in this is the legal duty of the employer, "through either the business entity that has ceased operations ... or any other related division, subsidiary, or parent corporation" to provide health benefits. In order for the signatory employer to be financially responsible to provide health benefits *through* another related business entity, be it a division, subsidiary, or parent corporation, there must be a legal duty between the two to so provide said health benefits.

In the case at bar, Unity has no legal duty to provide health benefits to the plaintiffs. The defendant readily concedes this. Defendant's Memorandum, page 10. The "no longer in business" inquiry now becomes straightforward. South Union, having been liquidated, (1) has ceased all mining and has ceased employing persons with no reasonable expectation that such operations will start up again, and (2) is financially unable to provide health benefits to the plaintiffs. Therefore, the plaintiffs are eligible for health benefits from the 1974 BP & T (1981).

This case is readily distinguishable from *Dist. 17 v. Allied Corp., supra,* where the Fourth Circuit affirmed the trustees decision denying health benefits to 1974 pensioners. In that case, the signatory employer had ceased operations and had sold most of the mining assets to two other coal mining companies, with no significant change in the operation of the mines after the transfer, but had not required the two mining companies to assume its obligation to provide health benefits. The trustees, interpreting the 1974 BP & T (1978), defined the term "successor," following their rules and procedures, applied the same to the facts, and concluded that the two other coal mining companies were "successor" companies to the signatory employer. Therefore, the pensioners were not eligible

for health benefits from the BP & T. The signatory employer and the two successor companies had a *legal duty* to provide the health benefits. The Fourth Circuit indicated, however, that if there was no legal duty of the signatory employer or the two successor companies to provide health benefits, then the BP & T would be responsible.

10. Although it is not necessary to now decide the question of the Trust Fund's responsibility for payment of the retiree benefits in the event circumstances should change so that neither Allied, Armco nor Shannon Pocahontas would be responsible for maintaining the benefits, it seems clear that the Trust Fund in those circumstances would be responsible.

*Dist. 17 v. Allied Corp., supra* at n. 10.

In the case at bar, no company is responsible for payment of health benefits to the plaintiffs. The trustees would have these pensioners slip through the safety net provided in the BP & T and suffer the consequence of the high cost of health care in the twilight of their life. The Court, however, will not allow the trustees to wash their hands of these pensioners. The trustees have made an erroneous decision on a question of law. The retired miner plaintiffs are the intended beneficiaries of the 1974 BP & T (1981) and are entitled to the health and non-pension benefits provided thereunder, from March 1981.

Accordingly, it is hereby ORDERED that defendant's motion for summary judgment is DENIED and plaintiffs' motion for summary judgment is GRANTED.

It is further ORDERED that the 1974 BP & T shall provide health and non-pension benefits under Article II. A. to the plaintiffs and their eligible spouses and dependants forthwith.

It is further ORDERED that the 1974 BP & T shall be liable for all eligible health and non-pension expenses under Article III of the 1974 BP & T, as amended, incurred by the plaintiffs and their eligible spouses and dependants from March 1981, and judgment shall be entered accordingly for the plaintiffs, with pre-judgment interest

thereon at the rate allowed by law, and costs, including reasonable attorney fees.

The Clerk is directed to transmit certified copies of this Order to counsel of record herein.