**DISTRICT 29, UNITED MINE WORKERS OF AMERICA; Herschel Henson, Plaintiff-Appellee,**

v.

**UNITED MINE WORKERS OF AMERICA 1974 BENEFIT PLAN AND TRUST, Defendant-Appellant,**

The Bituminous Coal Operators' Association, Inc., Amicus Curiae,

and

Manlo Mining Co., a domestic corp., Gopher Mining Co., a foreign corporation, Defendant.

**DISTRICT 29, UNITED MINE WORKERS OF AMERICA; Local Union 5821; Local Union 6046, United Mine Workers of America; Garland Walkup, Retiree; Madeline R. Thomas, Widow; Joseph M. Hanshew, Disabled Retiree; John Doe; Mary Doe, Plaintiff-Appellee,**

v.

**UNITED MINE WORKERS OF AMERICA 1974 BENEFIT PLAN AND TRUST, Defendant-Appellant,**

and

Royal Coal Company, Defendant,

The Bituminous Coal Operators' Association, Inc., Amicus Curiae.

Nos. 86–3709(L), 87–3018.

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1987.

Decided Aug. 13, 1987.

Rehearing and Rehearing En Banc Denied Oct. 16, 1987.

William Francis Hanrahan (Arent, Fox, Kintner, Plotkin & Kahn; Gerald E. Cole, Jr., Gen. Counsel, United Mine Workers of America Health & Retirement Funds, Carolyn Mensi Petralia, Senior Associate Counsel, on brief) for defendant-appellant.

Bradley James Pyles (Grant Crandall, Charles F. Donnelly, Crandall & Pyles, Michael H. Holland, Gen. Counsel, Deborah Stern, United Mine Workers of America on brief) for plaintiff-appellee.

(Charles P. O'Connor; Margery Sinder Friedman; Morgan Lewis & Bockius on brief), for amicus curiae Bituminous Coal Operators' Ass'n, Inc.

Before CHAPMAN, Circuit Judge, BRITT, U.S. District Judge for the Eastern District of North Carolina, and MacKENZIE, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

The complicated health benefit plan for retirees and their widows existing in the coal industry is again before the court.[1] The health benefit plan protecting coal industry workers requires individual employers to provide retirement health benefits, with the "1974 Benefit Plan and Trust," an industry-wide trust fund, to assume liability for these benefits when the worker's individual employer or its successor is no longer in business, as defined under the pertinent bargaining agreement. The difficult question presented in this appeal is, where the former employer remains "in business," as defined in the wage agreement, but is no longer legally liable to provide health benefits, must the 1974 Benefit Plan and Trust assume liability. Based on our reading of the terms of the agreements, and the intentions of the parties made manifest in entering those agreements, we affirm the district court's decision that the 1974 Benefit Plan and Trust must assume liability.

I

This appeal is a consolidation of two cases where the 1974 Benefit Plan and Trust refused to provide health benefits to pensioners. In one case,[2] the district court after conducting hearings issued a preliminary injunction against the 1974 Benefit Plan to prevent it from refusing to provide health benefits. In the other case,[3] the district court permanently enjoined the 1974 Benefit Plan from refusing to provide health and other nonpension benefits.

Prior to 1978, the 1974 Benefit Plan and Trust and its antecedent, created in 1950, were the sole means by which pensioners were provided with health benefits. Each mining company would contribute money, based upon its coal production, to the fund. The Bituminous Coal Operators Association (BCOA), a large group of coal producers, became worried that some of the smaller coal producers were manipulating their corporate structures and using the bankruptcy laws to evade their obligations to contribute to the 1974 Plan. Thus during negotiations for the 1978 wage agreement, the BCOA proposed that the 1974 Benefit Plan and Trust be eliminated, and that individual employers create individual means by which to supply retirement health benefits. The union demurred. The eventual compromise reached was that individual operators would have primary responsibility to provide retirement health benefits through private insurance carriers, but that the 1974 Benefit Plan would continue in existence in order to provide such benefits for "orphaned" workers: workers whose former employer or its corporate successor

1. See, *District 17, District 29, Local Union 7113 and Local Union 6023, United Mine Workers of America v. Allied Corporation*, 765 F.2d 412 (4th Cir.1985)(en banc), and *District 29, United Mine Workers of America v. Royal Coal Company*, 768 F.2d 588 (4th Cir.1985).

2. *District 29, United Mine Workers of America, and Herschel Henson v. The United Mine Work-ers of America 1974 Benefit Plan and Trust, Manlo Mining Co., and Gopher Mining Co.*, No. 5:86–0430 (S.D.W.V. July 10, 1986).

3. *District 29, United Mine Workers of America, et al., v. Royal Coal Company and The United Mine Workers of America 1974 Benefit Plan and Trust*, No. 5:85–0292 (S.D.W.V. Jan. 5, 1987).

was no longer in business. The specific language in the collective bargaining agreement which provides that the 1974 Benefit Plan and Trust will be utilized only where a retiree's former employer is no longer in business reads as follows:

The 1974 Benefit Plan and Trust provides health and other non-pension benefits, during the term of this Agreement to any retired miner under the 1974 Pension Plan or any successor plan(s) thereto who would otherwise cease to receive the health and other non-pension benefits provided herein because the signatory Employer (including successors and assigns) for whom such miner last worked in signatory classified employment is no longer in business. Such entitlement shall extend to surviving spouses and other beneficiaries who are eligible for health coverage as a result of their relationship to such a miner whose last signatory classified employment was with a signatory Employer which is no longer in business. For purposes of determining eligibility under the 1974 Benefit Plan and Trust, an Employer is considered to be "no longer in business" only if the Employer:

(a) has ceased all mining operations and has ceased employing persons under this Wage Agreement, with no reasonable expectation that such operations will start up again; and

(b) is financially unable (through the business entity that has ceased operations as described in subparagraph (a) above, including such company's successors or assigns, if any, or any other related division, subsidiary, or a parent corporation, regardless of whether covered by this Wage Agreement or not) to provide health and other non-pension benefits to its retired miners and surviving spouses.

Article XX(c)(3)(ii) of the 1981 and 1984 collective bargaining agreements.

Despite the patent limitation of the liability of the 1974 Benefit Plan and Trust to provide health benefits only "during the terms of this agreement," and only where the individual employer is "no longer in business," the general description to each of the many two-year collective bargaining agreements states that pensioners who retire before the effective date of each collective bargaining agreement are entitled to health benefits "for life" and their widows "until death or remarriage." The plaintiffs in these cases retired between 1976 and 1984, thus prior to the effective date of the 1984 collective bargaining agreement, which agreement contains in its general description the aforementioned language. These retirees' former employers, however, and their corporate successors are not signatories to the relevant wage agreements, and therefore these individual employers and their successors are no longer liable to provide health benefits. *See District 29, United Mine Workers of America v. Royal Coal Company,* 768 F.2d 588 (4th Cir. 1985). The corporate parent-successors of the individual employers, although not legally liable to pay health benefits, are apparently not "financially unable" to do so, and thus the literal provisions triggering the liability of the 1974 Benefit Plan and Trust only where the former employer or its successor is no longer in business are not satisfied. In other words, a former employer or its successor must have ceased all mining operation and be financially unable to provide benefits before it is deemed "no longer in business."

Thus the issue presented is whether the 1974 Benefit Plan must provide health benefits where the successor corporation of the former employer is financially able to provide benefits, but is not legally obligated to do so because it is not a signatory to the wage agreement. The district court held that the 1974 Benefit Fund must provide health benefits where the retiree's "last signatory employer is no longer able *or* required to provide such benefits." (Emphasis added.)

## II

At the outset of our analysis we note that we agree with the district court's conclusion that the intentions of the parties in providing for retirement health benefits was to guarantee their provision for life.

It is apparent from the record that the parties, in moving from a system wherein the health benefits were provided solely by the collective 1974 trust to a regime in which individual employers assumed primary liability, intended to change the method of providing health benefits, but they did not intend to create new, latent loopholes to coverage. The district court found that under the collective bargaining agreements and the 1974 trust, a retiring miner had been guaranteed benefits for life, and that the 1978 alterations in the procedures of providing these benefits did not alter that intention. We will not disturb the district court's findings and conclusions, which rely on the evidence and oral testimony submitted as an aid to construction of the contradictory language in the agreements.

The question remains, given the intention of the parties to provide lifetime benefits, whether the 1974 Benefit Plan and Trust must assume the burden of providing those benefits. It is clear that neither the former employer nor its corporate successor is legally liable for providing these health benefits. *See Royal, supra.* To construe the contract to create no liability on the part of the 1974 Benefit Plan would have the effect of defeating the expressed intention to provide lifetime benefits.

■ Given this intention of the parties, we will not permit the 1974 Benefit Plan and Trust to escape liability by its strict adherence to the literal terms in the agreement. From its beginning this trust was intended as the safety net for "orphaned" retired miners. It is likely that the parties in negotiating the provision of lifetime health benefits simply did not consider, prior to our decision in *Royal*, that a former employer or its successor could remain financially able to pay benefits (and therefore "in business"), and yet not be legally obligated to do so. It is clear that the parties believed they were establishing a seamless garment in the contract by providing for liability on behalf of individual employers as long as they remained in business, and liability on behalf of the 1974 Benefit Plan when those employers ceased being in business. But because of the manner in which "in business" has been defined by the parties, the unforeseen separation of financial ability and legal obligation has given rise to a tear in the garment. The 1974 Benefit Plan and Trust was established and continued in order to supply the health benefit needs of "orphaned" retirees, and thus construing the contract to impose that obligation on the trust fund, when the legal obligations of the former employer has terminated, can only further the purposes for which the trust fund was created.

We therefore affirm the district court's result based upon our interpretation of the labor agreements. We do not reach the issues decided by the district court under the Employee Retirement Income Security Act.

■ The appellants in *District 29, United Mine Workers of America, et al. v. United Mine Workers of America 1974 Benefit Plan and Trust and Royal Coal Company*, 826 F.2d 280 (4th Cir.1987), argue that the district court erred in its order requiring the 1974 Benefit Plan to reimburse the plaintiffs for all covered medical expenses incurred by Royal Coal Company pursuant to the preliminary injunction. The appellants argue that this order is ambiguous, as it might be read to require the plan to reimburse the plaintiffs for the attorneys' fees and disbursements that the plaintiffs were ordered to pay to Royal, in contradiction to Fed.R.Civ.P. 65(c). The appellants do not dispute the requirement that the plan reimburse plaintiffs for $4,310.71 in medical expenses paid by Royal.

Because the district court's order is ambiguous on the issue of reimbursement of attorneys' fee, we conclude that this issue can best be clarified by the district court and we remand this issue to the district court for such purpose. The judgment of the district court is

AFFIRMED IN PART AND REMANDED.