In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.

LTV STEEL COMPANY, INC., BCNR Mining Corporation, Nemacolin Mines Corporation, and Tuscaloosa Energy Corporation, Plaintiffs–Appellees,

v.

Joseph P. CONNORS, Jr., Donald E. Pierce, Jr., William Miller, William B. Jordan and Paul R. Dean, as Trustees of the United Mine Workers of America 1974 Benefit Plan and Trust, the United Mine Workers of America 1974 Benefit Plan and Trust, Defendants–Appellants,

and

The United Mine Workers of America, Defendant–Appellee.

Bankruptcy Nos. 86 B 11270–86 B 11334 (BRL), 86 B 11402 and 86 B 11464 (BRL).

Adv. No. 88–5502A.

No. 88 Civ. 8695 (SWK).

United States District Court, S.D. New York.

March 6, 1990.

---

Doar Devorkin & Rieck by John J. Rieck, Jr., New York City (Groom & Nordberg, Chartered by William F. Hanrahan, Arent, Fox, Kintner, Plotkin & Kahn by William B. Sullivan, Washington, D.C., of counsel), for defendants-appellants.

Davis Polk & Wardwell by Karen E. Wagner, Sharon Katz, Yael Spitzer, New York City, for plaintiffs-appellees.

Cornfield & Feldman by Barbara J. Hillman, Michael H. Holland, Chicago, Ill. (Crandall, Pyles & Crandall by Bradley J. Pyles, Grant Crandall, Logan, W. Va., of counsel), for defendant-appellee.

KRAM, District Judge.

This is an appeal of two final orders issued by Chief Judge Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York. The orders were issued in an adversary proceeding involving BCNR Mining Corporation, Nemacolin Mines Corporation, Tuscaloosa Energy Corporation (collectively "the Min-

ing Companies"), their parent company LTV Steel Corporation ("LTV"), the United Mine Workers of America ("the UMWA"), and the United Mine Workers of America 1974 Benefit Plan and Trust ("the Plan & Trust"). The first order was issued from the bench on August 1, 1988, and so ordered on August 3, 1988 ("the August 1 Order"). This order granted partial summary judgment to the Mining Companies and LTV on count one of their complaint, holding that the Mining Companies were not legally obligated to pay the health benefits of its retirees. Transcript of Aug. 1, 1988 Hearing at 41, 49. The second order was issued orally on August 4, 1988 and was so ordered on August 12, 1988 ("the August 4 Order"). This order granted UMWA's cross-motion for summary judgment, holding that the Plan & Trust is liable to pay the retirees' benefits. Transcript of Aug. 4, 1988 Hearing at 19–20. Pursuant to 28 U.S.C. § 158, the Plan & Trust appeals both of these orders, which this Court considers *de novo*. Bankr.R. 8013; *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

## Background

The Mining Companies are debtors-in-possession reorganizing under Chapter 11 of the United States Bankruptcy Code. 11 U.S.C. § 1101 *et seq.* The Plan & Trust is a collectively bargained, multi-employer welfare benefit plan that provides health benefits to certain retirees of the UMWA and their surviving spouses.[1] The Plan & Trust was established by the National Bituminous Coal Wage Agreement ("Wage Agreement") of 1974 and has continued pursuant to the 1978, 1981, 1984, and 1988 Wage Agreements. The UMWA is a labor organization which represents and has historically represented the employees and retired employees of the Mining Companies in collective bargaining.

The Mining Companies were signatories to the 1984 Wage Agreement, requiring

1. Eligible retirees are covered for their lifetime and surviving spouses are also covered for their lifetime unless they remarry. These benefits are guaranteed for life pursuant to the National Bituminous Coal Wage Agreements ("Wage Agreements"). *See* 1984 Wage Agreement, art. XX(h), at 137 *et seq.* (General Descriptions of Pension Plans).

employers to provide health benefits to their retirees through health benefit plans to be obtained from insurance companies. Pursuant to this agreement, the LTV Companies established and maintained health benefit plans for the retirees of each of the Mining Companies. The 1984 Wage Agreement also provided that the Plan & Trust would pay the health benefits of retirees who would not otherwise receive benefits because their last signatory employers are "no longer in business." Under the 1984 Wage Agreement an employer would be considered "no longer in business" only if it:

(a) has ceased all mining operations and has ceased employing persons under this Wage Agreement, with no reasonable expectation that such operations will start up again; and

(b) is financially unable (through either the business entity that has ceased operations as described in subparagraph (a) above, including such company's successors or assigns, if any, or any other related division, subsidiary, or parent corporation, regardless of whether covered by this Wage Agreement or not) to provide health and other non-pension benefits to retired miners and surviving spouses.

1984 Wage Agreement, Article XX(c)(3)(ii), at 112.

The Mining Companies ceased operations in 1986. LTV and its subsidiaries, including the Mining Companies, filed a Chapter 11 petition on July 17, 1986. LTV then unilaterally terminated the health benefits of 78,000 of its retirees and the retirees of its subsidiaries. LTV asserted that it was not permitted to pay such benefits without authorization of the Bankruptcy Court. Immediately thereafter, members of Congress introduced three bills, H.R. 5276, H.R. 5283, and S. 2690, that would have required LTV to reinstate the retiree health benefits that it had unilaterally terminated. The Senate passed its version of July 30, 1986. At the same time, the UMWA began a strike. On July 30, 1986, LTV requested that the Bankruptcy Court authorize it to

pay the benefits retroactive to July 17, 1986. LTV resumed paying these benefits and continued until August 1, 1988.

When the 1984 Wage Agreement expired on January 31, 1988, the Mining Companies did not enter into the successor agreement. The Mining Companies asserted that they were no longer contractually or legally obligated to provide retiree health benefits. The Mining Companies, however, continued to do so pending judicial resolution of this question.

On June 23, 1988, LTV and the Mining Companies (collectively "the Debtors") commenced an adversary proceeding against the Plan & Trust and the UMWA seeking relief on two counts. In count one, the Debtors sought declaratory relief on two issues. First, they sought a declaration that the Mining Companies' obligation to pay the retirees' benefits terminated upon the expiration of the 1984 Wage Agreement. Second, the Debtors sought a declaration that if the Mining Companies' retirees were entitled to the benefits, the Plan & Trust was obligated to provide such benefits. In count two the Debtors sought to recover from the Plan & Trust the amounts paid by LTV to the retirees subsequent to the expiration of the 1984 Wage Agreement on January 31, 1988.

On July 18, 1988, the Debtors moved for partial summary judgment on count one of their complaint. The Debtors sought summary judgment on the issue of whether LTV was obligated to pay the retirees' health benefits following the expiration of the 1984 Wage Agreement. The UMWA, on behalf of its retirees, answered and cross-claimed seeking to compel the Plan & Trust to provide the retirees' benefits. On July 29, 1988, the UMWA moved for summary judgment on its cross-claim.

On August 1, 1988, following oral argument, the Bankruptcy Court granted the Mining Companies' motion for partial summary judgment from the bench. Transcript of Aug. 1, 1988 Hearing at 40–41. The Bankruptcy Court found that the Mining Companies' obligation to pay benefits

ceased on January 31, 1988.[2]

At the hearing, the UMWA expressed concern that the retirees would have no source of payment of their benefits. The UMWA was concerned because the Bankruptcy Court found that LTV was not required to pay the benefits and the Plan & Trust asserted that it was not obligated to do so. *Id.* at 23–25, 43. Given these circumstances, Chief Judge Lifland decided to shorten the time for response to UMWA's summary judgment motion, making the motion returnable at 2:00 p.m. on Thursday, August 4, 1988.[3] *Id.* at 42, 46, 48. The Plan & Trust petitioned this Court seeking a stay of the August 4, 1988 Hearing. The motion for a stay was denied. Order of Judge Louis L. Stanton dated August 4, 1988.

At the hearing on August 4, 1988, the Bankruptcy Court granted the UMWA's summary judgment motion in its entirety. Transcript of Aug. 4, 1988 Hearing at 19–20, 23. The Bankruptcy Court also granted the Mining Companies' second request for declaratory relief, i.e., that the Plan & Trust was obligated to provide the health benefits for the retirees. *Id.* On August 12, 1988 Chief Judge Lifland so ordered his prior ruling.

The Plan & Trust has complied with this Order and has been paying the retirees' benefits since August 4, 1988. The Plan & Trust stipulated a withdrawal of a counterclaim it had filed, in order to meet the finality requirement of 28 U.S.C. § 158.[4] This Court subsequently entered an order finding that the August 1 and August 4 Orders are final orders within the meaning of § 158. Order of Judge Whitman Knapp at 2, dated October 12, 1988. The Plan & Trust appeals both orders of the Bankruptcy Court pursuant to § 158.

### Discussion

The Plan & Trust presents four arguments in favor of reversing the August 1 and August 4 Orders of the Bankruptcy Court. The Plan & Trust first asserts that the August 1 Order violates the Retiree Benefits Bankruptcy Protection Act of 1988 (the "Retiree Protection Act" or the "Act").[5] Second, the Plan & Trust argues that the Bankruptcy Court did not have subject matter jurisdiction to issue its August 4 order because it was not a core proceeding. The Plan & Trust also claims that it was denied a full and fair opportunity to litigate the issue of the August 4 Order because the Bankruptcy Court shortened the time for response to the UMWA's summary judgment motion. Finally, the Plan & Trust argues that it is not liable to pay the retirees' benefits because the Mining Companies do not meet the Wage Agreement's definition of "no longer in business."

The UMWA, on behalf of its retirees, filed a brief with this Court asserting that the August 1 and August 4 Orders should be affirmed. The UMWA argues that the Plan & Trust is obligated to pay the retirees' benefits pursuant to the 1984 Wage Agreement. The UMWA asserts that the Plan & Trust is collaterally estopped from raising the argument that it is not liable for the retirees' benefits because the issue has been fully and fairly litigated by the Plan & Trust on three other occasions.[6]

---

2. This ruling was so ordered two days later.

3. The UMWA summary judgment motion, which contained no return date, had been served on all the parties on Friday morning, July 29, 1988.

4. This section states:
   The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158(a).

5. Pub.L. No. 100–334, 102 Stat. 610 (June 16, 1988) *codified in* 11 U.S.C. §§ 1101 *et seq.*

6. *District 29, United Mine Workers of America v. United Mine Workers of America 1974 Benefit Plan and Trust,* 826 F.2d 280 (4th Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); *Schifano v. United Mine Workers of America 1974 Benefit Plan and Trust,* 655 F.Supp. 200 (N.D.W.Va.1987); *Crockett v. Vecellio and Grogan,* slip op. No. 1, 85–1448, 1987 WL 60303 (S.D.W.Va. Feb. 4, 1987).

The UMWA further argues that the Bankruptcy Court properly had subject matter jurisdiction because the issue raised was a core matter. Finally, the UMWA argues that the Plan & Trust was not deprived a full and fair opportunity to litigate the issue raised by the UMWA's summary judgment motion due to the shortened time to respond to the UMWA's summary judgment motion.

The Debtors submitted a brief also asserting that the August 1 and August 4 Orders should be affirmed. The Debtors' first argument is that the Retiree Protection Act does not apply to the present case and therefore they are not obligated to provide the retirees' benefits. The Debtors argue further that even if the Act applies, it was not intended to compel debtors to make retiree health benefit payments if they are not legally obligated to do so. The Debtors also repeat the UMWA's arguments with respect to collateral estoppel, subject matter jurisdiction of the Bankruptcy Court to enter a final determination, and full and fair opportunity to litigate.

## I. The August 1, 1988 Order

The Plan & Trust's argument for reversal of the August 1 Order is that it violates the Retiree Protection Act. The Plan & Trust claims that the Act applies to this case and that it requires the Mining Companies to pay the retiree health benefits. The Debtors reply that the Act is not applicable to actions occurring before its effective date. The Debtors also argue that the Retiree Protection Act does not apply because the Mining Companies are no longer contractually obligated to pay the retirees' benefits. They argue that Congress did not intend the Act to require debtors to pay the benefits when there is no legal obligation to do so.

The major portion of the Retiree Protection Act is contained in section 2 of the Act. This section amends the Bankruptcy Code by adding § 1114 to it. Section 4(b) of the Retiree Protection Act provides that "[t]he amendments made by section 2 shall not apply with respect to cases commenced ... before [June 16, 1988]." The Mining Companies had filed a petition for reorganization under Chapter 11 almost two years earlier on July 17, 1986. Therefore, section 2 of the Retiree Protection Act is not applicable to the present case, as the Plan & Trust concedes.

■ The Plan & Trust, however, asserts that section 3 of the Act obligates the Mining Companies to pay. This section amends § 608(a) of the second Title VI of the "Joint resolution making continuing appropriations for the fiscal year 1987 and for other purposes." Pub.L. No. 99–591, 100 Stat. 3341–74 (October 30, 1986). This was stop-gap legislation which Congress passed pending the enactment of the Retiree Protection Act. Section 3 applies to certain cases which were in Chapter 11 bankruptcy at the time the Act was enacted. The Debtors concede that section 3 does apply to the case, but they argue that it does not obligate them to continue to provide retiree benefits. The issue thus before this Court on the August 1 Order is whether section 3 of the Act requires a debtor-in-possession to continue to pay retiree health benefits pursuant to a collective bargaining agreement for the duration of the Chapter 11 proceeding, if the collective bargaining agreement, and thus the contractual obligation, expires during the proceeding.

The Plan & Trust argues that the Act does require debtors to pay retiree health benefits even when there is no obligation to do so. An analysis of the legislative history of the Retiree Protection Act shows that this is not what Congress intended. Congress passed the Retiree Protection Act, and the prior stopgap legislation, in order to prevent the unilateral termination or modification of a Chapter 11 debtor's obligation to pay retiree health benefits without notice and an opportunity for the retirees to protect their interests. *See, e.g.,* Comments of Senator Heinz, 134 Cong.Rec. S 6827 (daily ed. May 26, 1988) ("The bill will protect retirees from unilateral termination of benefits by a company filing a Chapter 11 bankruptcy petition.").

In this case, the termination of the Wage Agreement, and thus the Mining Compa-

nies' obligation to pay, is not unilateral action by the Debtors but a pre-existing contractual provision. Congress did not intend for the Retiree Protection Act to reach this type of action. Senator Byrd, a cosponsor of the Retiree Protection Act, stated that

> [w]hile thousands of retirees could lose their medical and life insurance benefits as a result of their employer's actions under a chapter 11 bankruptcy filing, these companies have a *legal* and *contractual* obligation to their retirees.... This legislation will not guarantee continuation of these benefits, but it will provide a mechanism that will allow the retirees' position to be heard.

133 Cong.Rec. S 2237–38 (Feb. 19, 1987) (remarks of cosponsor Senator Byrd upon the introduction of the Senate version of the bill which became the Retiree Protection Act) (emphasis added). According to the provisions of the Wage Agreement, the employer is responsible for maintaining retiree health benefit plans which "shall be guaranteed *during the term of this Agreement,*" which expired on January 31, 1988.[7] 1984 Wage Agreement, Article XX(c)(3)(i), at 111 (emphasis added).

The legislative history reveals that the Retiree Benefits Bankruptcy Protection Act of 1988 does not require the LTV to continue to pay retiree benefits in this case. Chief Judge Lifland's decision that the Mining Companies were *no longer* contractually obligated to provide retiree benefits was correct.

## II. The August 4, 1988 Order

The Plan & Trust presents three arguments upon which it requests this Court to reverse the August 4 Order of the Bankruptcy Court. The Plan & Trust claims that the Bankruptcy Court did not have subject matter jurisdiction to issue a final determination, that the Plan & Trust was not afforded a full and fair opportunity to prepare for the hearing, and that based on the language of the Wage Agreement the Plan & Trust is not obligated to pay the benefits for the Mining Companies' retirees.

### A. Subject Matter Jurisdiction of the Bankruptcy Court

■ In order for the Bankruptcy Court to have subject matter jurisdiction over the issues of an adversary proceeding, the issues must be core matters. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983); *In re Marine Pollution Services Inc.,* 88 B.R. 588, 595–96 (S.D.N.Y.1988). The determination of whether a case is a core proceeding is governed by 28 U.S.C. § 157. Section 157 contains a partial list of matters which constitute core proceedings. Chief Judge Lifland determined that this case was a core proceeding under § 157(b)(2)(A) and (O).[8]

The Plan & Trust claims that the August 4 Order was not a core proceeding and therefore the Bankruptcy Court lacked subject matter jurisdiction to issue a final order. The Plan & Trust concedes that only the August 1 Order involved a core matter because it concerned the liability of the Mining Companies. However, the Plan & Trust argues that because the August 4 hearing was an independent proceeding involving only the liability of the Plan & Trust, it was not a core proceeding.

---

**7.** The Mining Companies paid the retiree health benefits through August 4, 1988.

**8.** These provisions state:
> (2) *Core proceedings* include, but are not limited to—
> (A) matters concerning the administration of the estate;

. . . . .

> (O) other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(A) and (O) (1988).

The Mining Companies argue that the August 4 Order was a core proceeding under 28 U.S.C. § 157. They assert that because the Bankruptcy Court found that the issues involved in the August 4 Order were encompassed in the August 1 hearing, the August 4 hearing was a core proceeding. Further, the Mining Companies argue that the resolution of the UMWA's cross-claim was a core proceeding independent of its inclusion in the August 1 Order. The Mining Companies claim that the resolution of the issue involved in the August 4 Order was necessary for LTV's attempt to recover the payments it made between January 31 and August 4, 1988. Because this resolution was necessary for the administration of the estates, the Mining Companies assert that the August 4 Order was a core proceeding.

The UMWA argues that this was a core proceeding because it bears on the relationship between a creditor of the estate and satisfaction of its claim and thus affects the estate. Furthermore, the UMWA argues that its cross-claim (the subject of the August 4 hearing) was made pursuant to Bankr.R. 7013 and Fed.R.Civ.P. 13(g), which permit cross-claims against co-parties if they involve the subject matter of the original action. The UMWA argues that because the subject matter of the cross-claim is identical to that of the complaint, it is a core proceeding.

■ The issues that were raised at the August 4 hearing were also an integral part of the August 1 hearing, which was a core proceeding. In fact, the hearing really constituted one proceeding, the determination of count one of the Debtors' complaint. The two orders in combination constitute a core matter under 28 U.S.C. § 157(b)(2)(A) and (O). The orders determined whether the Mining Companies were liable, and if they were not, whether the Plan & Trust would be liable. The Orders were a determination of the Mining Companies' obligation to pay retiree health benefits which is a core proceeding. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 662 (4th Cir.1985) (trustee's action to adjudicate rights to pension fund assets arises under Title 11).

■ The August 4 hearing constituted a core proceeding even independent of the August 1 Order. From January 31, 1988 (expiration of the 1984 Wage Agreement) to August 4, 1988, LTV paid the retiree benefits. The August 1 Order determined that the Mining Companies were not obligated to make retiree benefit payments after the expiration of the 1984 Wage Agreement. In order for LTV to recover the cost of continuing to provide the retiree benefits after its contractual obligation ended, it was necessary for the Bankruptcy Court to determine if the Plan & Trust was liable for the benefits. The resolution of the Plan & Trust's liability was necessary to determine whether LTV could recover from the Plan & Trust the money it paid after January 31, 1988. The resolution of the Plan & Trust's liability was a core proceeding because it was an attempt by the Mining Companies to collect a post-petition debt. The collection of a post-petition debt is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir. 1987); *In re Sattlers, Inc.,* 82 B.R. 229, 232 n. 4 (Bankr.S.D.N.Y.1988). In *Arnold Print* the court held that the debtor-in-possession's action to collect a post-petition debt was a core proceeding under § 157(b)(2)(A), "because it involves a claim that arose out of the administrative activities of a debtor-in-possession." *Arnold Print,* 815 F.2d at 168. The payment of retiree benefits by the Debtors was an administrative activity. The recovery of those monies which the Debtors paid after their obligation had ceased is a core proceeding. Also, LTV's ability to recover the amount paid is a matter that effects the final administration of the estate under § 157(b)(2)(A). This case is similar to *In re Mesa Intercontinental, Inc.,* 79 B.R. 669 (Bankr.S.D.Tex.1987), where the court held that a suit between two non-debtors over money that one owed the debtor was a core proceeding. *Id.* at 671. In *Mesa,* the suit between non-debtors was a core matter because the resolution of the issue was necessary to finally administer the estate. *Id.* at

671. Determination of the Plan & Trust's liability is necessary to finally administer the Mining Companies' estates.

Chief Judge Lifland correctly ruled that the August 4 hearing and order was a core proceeding.

### B. *Full and Fair Opportunity to Litigate*

The August 4 order completed a determination of count one of the complaint and it fully resolved the UMWA's cross motion. It was brought on by a summary judgment motion that the UMWA had filed and served on the parties seven days prior. Federal Rule of Civil Procedure 56 provides that on a motion for summary judgment ten days' notice shall be provided. Bankruptcy Rule 7056 makes Rule 56 applicable to adversary proceedings in bankruptcy court. The Plan & Trust claims that it was denied a full and fair opportunity to litigate the issue raised at the August 4 hearing because it did not receive ten days to respond to the summary judgment motion as required by Rule 56. For this reason the Plan & Trust contends that the August 4 Order should be reversed.

Bankr.R. 9006(c)(1) allows the bankruptcy court to shorten the length of time required or allowed for any act by the Bankruptcy Code.[9] This rule applies to the present case and allowed Chief Judge Lifland to shorten the time for the Plan & Trust to respond to the summary judgment motion upon a showing of cause. The Bankruptcy Court did inquire into, and found, a showing of cause. During the August 1 hearing the issue of the Plan & Trust's liability was not fully raised because the Plan & Trust claimed that it had prepared only to address the issue of the Mining Companies' liability at the hearing. Chief Judge Lifland was ready to address the Mining Companies' liability as well as the Plan & Trust's liability at the first hearing. The Bankruptcy Court allowed the issue of the Plan & Trust's liability to be heard at a second hearing because the Plan & Trust claimed that it was not on notice that the August 1 hearing involved both issues. Due to the severe hardship that would be inflicted upon the retirees if their benefits were terminated, the Bankruptcy Court shortened the time to respond to the summary judgment motion of the UMWA.[10]

Furthermore, the Plan & Trust has had ample opportunity to litigate the issue of its liability under the Wage Agreement. This issue had been substantially litigated in other forums by the Plan & Trust prior to the August 4 hearing.[11] The ten day period to respond to a Rule 56 motion can be shortened in extraordinary cases when ten days' notice is impractical and there is no prejudice to the non-moving party. *Cf. Gutwein v. Roche Laboratories,* 739 F.2d 93, 95 (2d Cir.1984) (stating that ten day period could be shortened in extraordinary cases but holding that it wasn't true in the

---

**9.** This rule provides that:

Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced. Bankr.R. 9006(c)(1) (1988).

**10.** In granting the shorten response time Chief Judge Lifland stated:

I think it is intolerable to leave these retirees in a squeeze.

.     .     .     .     .

Mr. Hanrahan, you have indicated and shown a wonderful ability to marshal your firm's talents with respect to briefing.

As a matter of fact, when I gave you time for a brief last week I think you handed it up to me at the very moment I gave you some extra time to respond by way of brief.

But I think you are fully familiar with all of the issues here and it shouldn't create a great burden. Actually, everything that is the subject of the Mine Workers' Motion for Summary Judgment is really the subject and dealt with pursuant to count one [of the Debtors' complaint].

Transcript of Aug. 1, 1988 Hearing at 47–48.

**11.** *District 29, United Mine Workers of America v. United Mine Workers of America 1974 Benefit Plan and Trust,* 826 F.2d 280 (4th Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); *Schifano v. United Mine Workers of America 1974 Benefit Plan and Trust,* 655 F.Supp. 200 (N.D.W.Va.1987); *Crockett v. Vecellio and Grogan,* Slip Op. No. 1, 85–1448 (S.D. W.Va. Feb. 4, 1987).

case before the panel). Such a situation, however, existed in the present case. The Bankruptcy Court had determined that the Mining Companies were not obligated to pay the retiree benefits, thus the retirees were in danger of losing their benefits. In order to remedy this dilemma, Chief Judge Lifland stayed his August 1 decision, forcing the Debtors to continue to make payments that they were not legally obligated to make. The Court also made the UMWA's summary judgment motion returnable August 4, 1988. The Plan & Trust was not prejudiced by the shortened response time because there was a full record, the issues were raised in the August 1 hearing, and the Plan & Trust had extensively litigated the same issue in other forums. Furthermore, unlike the Federal Rules of Civil Procedure, which were at issue in *Gutwein*, the Bankruptcy Rules contain a provision that allows the bankruptcy court to shorten the time to respond to summary judgment motions. Bankr.R. 9006(c)(1) (1988).

The Bankruptcy Court did not abuse its discretion when it shortened the time to respond to the UMWA's summary judgment, and the Plan & Trust was not denied a full and fair opportunity to litigate the issue of its liability under the Wage Agreements.

### C. *The Plan & Trust's Obligation*

The Plan & Trust claims that it is only liable to provide retiree health benefits when the retirees' last signatory employer meets the "no longer in business" requirements set forth in the Wage Agreement, even if the employer no longer has a legal or contractual obligation to pay the benefits. In the present case, the Plan & Trust alleges that the Mining Companies are still in business and thus it is not required to provide the benefits even though the Mining Companies have no obligation to pay. The Plan & Trust argues that the retirees are not entitled to health benefits because of the requirement that the last signatory employer is "no longer in business."

The UMWA and the Debtors argue that the Plan & Trust is required to pay where

the employer no longer has such an obligation. Therefore, they argue that the Plan & Trust is obligated to pay the retiree health benefits even though the Mining Companies do not meet the contractual definition of "no longer in business." The UMWA and the Debtors argue that the Plan & Trust was established to provide benefits for "orphaned" pensioners who would otherwise be deprived of their guaranteed lifetime benefits.

The interpretation of the "no longer in business" provision of the 1984 Wage Agreement has been fully adjudicated in other forums by the Plan & Trust, most notably in *District 29, United Mine Workers of America v. United Mine Workers of America 1974 Benefit Plan and Trust*, 826 F.2d 280 (4th Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988) (*"Royal Coal II"*). At issue in *Royal Coal II* was a provision of the 1981 Wage Agreement which is identical to the provision in the 1984 Wage Agreement. The issue resolved in *Royal Coal II* is the same issue now raised by the Plan & Trust, that is, whether the Plan & Trust must provide retiree health benefits under the Wage Agreement where the parent or successor corporation of the former employer is financially able to provide such benefits, but is not legally obligated to do so because it is no longer a signatory to the Wage Agreement. The Fourth Circuit held in *Royal Coal II* that the Plan & Trust was liable to provide retiree health benefits under these circumstances. This issue has been raised by the Plan & Trust in other cases in which the courts have also determined that the Plan & Trust is obligated to provide the benefits in similar circumstances. *Schifano v. United Mine Workers of America 1974 Benefit Plan and Trust*, 655 F.Supp. 200 (N.D.W.Va.1987); *Crockett v. Vecellio and Grogan*, Slip Op. No. 1, 85–1448 (S.D.W.Va. Feb. 4, 1987). The Plan & Trust was a defendant in *Royal Coal II*, *Schifano*, and *Crockett*, and as such actually litigated this issue of contractual interpretation.

Chief Judge Lifland held that the Plan & Trust's argument concerning the "no longer in business" provision failed on two

grounds. First, he held that the Plan & Trust's argument failed on the merits.[12] Moreover, he held that collateral estoppel is applicable to this case and that the Plan & Trust is collaterally estopped from raising this argument because of the Fourth Circuit's resolution of it.[13]

Collateral estoppel precludes a party from raising the same issue in a subsequent case which was fully and fairly litigated in a prior case to which it was a party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Parklane* the Supreme Court held that the doctrine of offensive collateral estoppel could be used by a plaintiff who was not a party to the prior litigation to preclude the defendant from raising an issue which had already been fully litigated in the prior action. *Id.* at 332–33, 99 S.Ct. at 652. The Supreme Court held that offensive collateral estoppel could be used in cases where the defendant has fully litigated the issue in another proceeding, it was not possible for the plaintiff to join in the prior action, and the application of offensive collateral estoppel is not unfair to the defendant. *Id.* at 331, 99 S.Ct. at 651.

The present case is precisely the type in which offensive collateral estoppel is permitted under *Parklane*. The issue was fully litigated by the Plan & Trust in *Royal Coal II*, it was not possible for the Debtors to join in *Royal Coal II*, and the application of offensive collateral estoppel is not unfair to the Plan & Trust. The Plan & Trust's attempt to relitigate this issue, which it has fully adjudicated in several other forums, offends the central policy underlying collateral estoppel, that is promoting judicial economy by preventing needless litigation. *Id.* at 326, 99 S.Ct. at 649.

Furthermore, even if the Plan & Trust were not collaterally estopped from raising this issue, its argument lacks merit to convince this Court to part with the Fourth Circuit precedent. The terms of the Wage Agreements make it clear that the retiree benefits are intended to be lifetime benefits. The Wage Agreements state in several places that "pensioner[s] shall be entitled to retain [their] Health Services card for life." 1984 Wage Agreement, art. XX(h), at 137 (General Description of Plan & Trust). The Wage Agreements also state that "[a] surviving spouse will be entitled to retain a Health Services card until death or remarriage, subject to the $500 earnings limit." *Id.* at 138. The parties who negotiated the Wage Agreements also intended that the Plan & Trust was to provide the retiree benefits when the employers were no longer able to do so. *Royal Coal II*, 826 F.2d at 282–83. The parties that negotiated the Wage Agreements did not intend to create a loophole that would allow the Plan & Trust to escape its liability to provide the retiree health benefits when the employers were no longer obligated to do so. *Id.* at 283.

The Bankruptcy Court therefore was correct in holding that the Plan & Trust is liable to provide the retiree health benefit.

### Conclusion

For the aforementioned reasons, the Bankruptcy Court's August 1 and 4 orders are affirmed.

SO ORDERED.

---

12. Chief Judge Lifland stated that "I need not even get into the issue of collateral estoppel, offensive or otherwise, because I believe on the merits that the matter is totally dispositive, at least as far as the union's cross-motion is concerned." Transcript of Aug. 4, 1988 Hearing at 20.

13. Chief Judge Lifland stated that

in reviewing the doctrine of collateral estoppel I do find that it's applicable here. This matter has been litigated in other Courts. It is just about on all fours.

The attempts by the Trust to show that there is a difference here from the matters considered by all of the Courts below the Fourth Circuit and above the Fourth Circuit amount to essentially hair splitting. And if I might be permitted and you may find me misguided, Mr. Hanrahan, the hairs out is a wig, I think are artificial, frankly, and I do find that the doctrine of collateral estoppel is very appropriate here.

Transcript of Aug. 4, 1988 Hearing at 20.