DISTRICT 29, UNITED MINE WORK-ERS OF AMERICA; Local Union 5821, Local Union 6046, United Mine Workers of America; Garland Walkup, Retiree; Madeline R. Thomas, Widow; Joseph M. Hanshew, Disabled Retiree; and John and Mary Doe, Appellees,

v.

ROYAL COAL COMPANY, Appellant,

and

United Mine Workers of America 1974 Benefit Plan and Trust, Defendant.

No. 85–1336.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1985.

Decided July 23, 1985.

Forrest H. Roles, Charleston, W.Va. (John R. Woodrum, Washington, D.C., Anna M. Norton, Smith, Heenan & Althen, Charleston, W.Va., on brief) for appellant.

Bradley J. Pyles, Logan, W.Va. (Charles F. Donnelly, Grant Crandall, Crandall, Pyles & Crandall, Logan, W.Va., Deborah Haynes, Larry Harless, Charleston, W.Va., on brief) for appellees.

Before WIDENER and CHAPMAN, Circuit Judges and TURK, United States District Judge for the Western District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

The issue in this expedited appeal is whether a coal company's obligation to provide health benefits and life insurance coverage to its retired and disabled coal miners under the National Bituminous Coal Wage Agreements of 1978 and 1981 continues beyond the expiration of those Agreements. Defendant Royal Coal Company (Royal) appeals from a preliminary injunction issued by the district court requiring Royal to provide these benefits to its former employees (or their surviving spouses) who either retired or became disabled prior to the expiration of the 1978 and 1981 Wage Agreements. Royal ceased all active mining operations during the term of the 1981 Wage Agreement and has not become a signatory to the 1984 Wage Agreement. We hold that Royal's obligation to provide health benefits and life insurance coverage to its retired and disabled coal miners under the 1978 and 1981 Wage Agreements ceased upon the expiration of those Agreements. Accordingly, we vacate the district court's preliminary injunction and remand the case for further proceedings.

I

Plaintiffs represent a class of approximately seventy-eight retired and disabled coal miners, and widows of retired and disabled coal miners, whose last employment in the coal industry was with Royal.[1] Plaintiffs brought this action against Royal and the United Mine Workers of America 1974 Benefit Plan and Trust (The 1974 Ben-

---

1. Plaintiffs are District 29, United Mine Workers of America, Local Unions Nos. 5821 and 6046, United Mine Workers of America, and three individuals who were either union members who had retired from the employment of Royal or dependent survivors of such members.

efit Plan), alleging that either Royal or the 1974 Benefit Plan was responsible for providing health benefits and life insurance coverage to the class members.

Prior to October 1, 1984, the class members were receiving pension benefits from the United Mine Workers of America 1974 Pension Plan and Trust and nonpension benefits, including health benefits and life insurance coverage, from their last employer, Royal. Most of the class members (or their husbands, in the case of widows) retired from Royal prior to June 5, 1981, the effective date of the 1981 Wage Agreement, and all of them retired prior to the expiration of the 1981 Wage Agreement on October 1, 1984.

For many years Royal had been a signatory to national agreements negotiated between the United Mine Workers of America (UMWA) and the Bituminous Coal Operators Association (BCOA), including the 1978 and 1981 Wage Agreements. Royal ceased all active mining operations during the term of the 1981 Wage Agreement and has not become a signatory to the 1984 Wage Agreement. Without notice to plaintiffs Royal ceased providing health benefits and life insurance coverage to the class members on or about October 1, 1984. The 1974 Benefit Plan has declined to assume responsibility for providing these benefits on the ground that Royal has sufficient assets to pay the benefits and thus does not qualify as "no longer in business" within the meaning of the 1978 and 1981 Wage Agreements.

Plaintiffs filed this action on March 7, 1985. On March 12, 1985, the district court issued a temporary restraining order requiring Royal to reinstate health benefits and life insurance coverage for a period of ten days. On March 18, the district court held a hearing on plaintiffs' motion for a preliminary injunction, and on April 2, 1985, the district court granted a preliminary injunction against Royal. The district court made no ruling as to the 1974 Benefit Plan's liability. Furthermore, the district court denied Royal's motion to suspend the preliminary injunction pending appeal, but

increased the injunction bond from $15,000 to $30,000. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a).

## II

▮ Whether an employer's obligation to provide benefits to its retirees continues beyond the expiration of the underlying collective bargaining agreement depends upon the intent of the parties. *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Yard-Man, Inc.,* 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). *Accord, Upholsterers' International Union v. American Pad & Textile Co.,* 372 F.2d 427 (6th Cir.1967); *Bower v. Bunker Hill Co.,* 725 F.2d 1221 (9th Cir.1984). Moreover, whether the parties intended such an employer's obligation to continue beyond the expiration of the collective bargaining agreement is primarily a question of contract interpretation. *See John Wiley & Sons v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964); *Local 1251, International Union, UAW v. Robertshaw Controls Co.,* 405 F.2d 29, 33 (2d Cir.1968). Thus, we must first look to the language of the 1978 and 1981 Wage Agreements for any clear manifestations of the parties' intent. *See Yard-Man,* 716 F.2d at 1479; *Kellogg Co. v. NLRB,* 457 F.2d 519, 524 (6th Cir.1972); *cert. denied,* 409 U.S. 850, 93 S.Ct. 58, 34 L.Ed.2d 92 (1972).

Article XX, Section (c)(3)(i) of the 1978 Wage Agreement provides, in pertinent part:

... [E]ach signatory Employer shall establish an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other nonpension benefits for its Employees covered by this Agreement as well as pensioners, under the 1974 Pension Plan and Trust, whose last classified employment was with such Employer. The benefits provided pursuant to such plans shall be guaranteed *during the term of this Agreement* by each Employer at levels

set forth in such plans.... (Emphasis added).

The same provision in the 1981 Wage Agreement states, in pertinent part:

Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other nonpension benefits for its Employees covered by this Agreement as well as pensioners, under the 1974 Pension Plan and Trust, whose last signatory classified employment was with such Employer. The benefits provided by the Employer to its eligible Participants pursuant to such plans shall be guaranteed *during the term of this Agreement* by that Employer at levels set forth in such plans. (Emphasis added).

This court recently considered a similar issue under Article XX, Section (c)(3)(i) of the 1978 Wage Agreement in *District 17, United Mine Workers v. Allied Corp.*, 765 F.2d 412 (4th Cir.1985 (*en banc*)). In that case Allied Corporation sold its mining operations during the term of the 1978 Wage Agreement but failed to fulfill its duty under that Agreement's successorship clause of requiring its purchasers to assume its labor contract duties, including its collective bargaining duties with respect to health and other nonpension benefits for its retirees. Allied was not a signatory to the 1981 Wage Agreement. The district court ruled first that Allied's contractual obligation to provide health and other nonpension benefits to its retirees did not terminate with the expiration of the 1978 Wage Agreement and, alternatively, that even if Allied's obligation to provide the benefits did not continue, that Allied was yet obligated to provide them because the purchasers' failure to agree to provide the benefits in subsequent periods was a legally caused result of Allied's breach of the successorship clause contained in the 1978 Wage Agreement. Accordingly, the district court required Allied to continue to pay the benefits, even though the 1978 Wage Agreement had expired, unless and until Allied could negotiate with the purchasers for the latter two companies to provide the benefits.

This court affirmed the district court's decision in a five-four *en banc* decision. The *en banc* majority affirmed the district court's decision on the ground that "Allied's breach occurred in 1980 when it transferred the mines to [the purchasers] without passing on all of its obligation as required by Article I of the 1978 collective bargaining agreement." At 420. However, the *en banc* majority appeared to accept the dissent's position that a coal mine operator's contractual obligation to provide health and other nonpension benefits to its retirees under the 1978 Wage Agreement does not continue beyond the termination of that Agreement. Specifically addressing Article XX, Section (c)(3)(i) of the 1978 Wage Agreement, the *en banc* majority stated:

*Although this obligation existed only for the life of the 1978 contract, which expired in 1981,* it was perpetuated in the 1981 and 1984 contracts.

Superficially, *it might appear that none of the defendants is liable for the retirees' benefits.* Because Allied had withdrawn from the coal business in 1980 it was not a signatory to the 1981 contract. Armco and Shannon Pocahontas, on the other hand, although signatories to the 1978 and 1981 contracts, agreed with Allied when they individually acquired the two mines in 1980 that they would not assume the obligations to pay benefits to Allied's retirees. In creating the 1974 Benefit Trust, the union and the coal operators anticipated a successor scenario and agreed that, under such circumstances, the 1974 Benefit Trust could not assume responsibility for payment of the benefits.

*If that were the complete picture, the answer to this dispute simply would be that after expiration of the 1978 agreement on March 27, 1981, no one had a duty to provide the retired miners with the disputed benefits.*

At 417 (emphasis added).

The *en banc* dissent adopted the original panel's majority decision. At 421. *See*

*District 17, United Mine Workers v. Allied Corp.,* 735 F.2d 121 (4th Cir.1984). The panel majority, and thus the *en banc* dissent, was even more explicit than the *en banc* majority in stating that a coal mine operator's obligation to provide health and other nonpension benefits to its retirees under the 1978 Wage Agreement did not continue beyond the expiration of that Agreement. Specifically, the panel majority stated:

> The clear language of the Wage Agreement required health benefit payments only during the term of the contract and not thereafter. The district court was clearly in error in extending Allied's obligation to pay for these benefits beyond the expiration date (March 26, 1981) of the 1978 contract. Allied is not a signatory to the 1981 National Bituminous Coal Wage Agreement.

735 F.2d at 124. The panel majority also stated:

> There is no factual or legal basis for the district court's conclusion that obligations under the 1978 Wage Agreement extended past its expiration date. Employer obligations and employee rights, under a collective bargaining agreement, do not survive the expiration of the agreement absent a clear intention of the parties. *Local 1251 UAW v. Robertshaw Controls Co.,* 405 F.2d 29 (2nd Cir.1968). The testimony of the contract negotiators clearly show that all rights and benefits were open for negotiation every three years.

735 F.2d at 127.

The panel majority, and thus the dissent in the *en banc* decision, based its interpretation of the 1978 Wage Agreement on the language contained in Article XX, Section (c)(3)(i) [2] and the deposition testimony of the contract negotiators that all rights and benefits under the collective bargaining agreements were open for negotiation every three years. *Id.* Furthermore, this interpretation of the 1978 Wage Agreement is consistent with the International Union's understanding of similar language contained in the 1981 Wage Agreement as expressed by a letter from the officers of the union to the members of the union, including 1974 pensioners and their surviving spouses. [3]

■ Based upon the *en banc* majority's interpretation of the 1978 Wage Agreement in *Allied Corp.,* especially when coupled with the more explicit language contained in the *en banc* dissent, we hold that Royal's obligation to provide health benefits and life insurance coverage to its retired and disabled coal miners under the 1978 and 1981 Wage Agreements does not extend beyond the expiration of those Agreements. Thus, we vacate the district court's preliminary injunction and remand the case for further proceedings.

### III

On remand the district court should determine the damages sustained by Royal as a result of the injunction. The district court should also determine whether the 1974 Benefit Plan is obligated to provide benefits to these class members.

### VACATED AND REMANDED.

---

**2.** "The benefits provided pursuant to such plans shall be guaranteed *during the term of this Agreement* by each Employer at levels set forth in such plans." (Emphasis in the panel's opinion).

**3.** In anticipation of the expiration of the 1981 Wage Agreement, the officers of the International Union sent a letter to the members of the union informing them of what would occur if the 1981 Wage Agreement expired without a successor agreement providing for their health care being negotiated. The letter stated that in the event of a termination of the 1981 Wage Agreement:

> Health care for you and your dependents will continue from the company which currently provides your coverage in the event your employer is working. If the company which provides your benefits is selectively struck, *health care should be available at your expense* from the company. All 1974 pensioners who are members in good standing of the UMWA are also eligible to purchase benefits through the UMWA Selective Strike insurance program, if their company is the target of a selective strike, instead of buying insurance from the coal operator. App. at 34.