**J.C. BOX, James E. Box, Ralph R. Doss, Ray McCaleb, Robert B. Miles, Sr., Leon Farris, and Jack D. Smith, Plaintiffs,**

v.

**COALITE, INC., Defendant.**

**No. CV 85–HM–1374–J.**

United States District Court, N.D. Alabama, Jasper Division.

July 23, 1986.

Charles Cleveland, Cleveland & Cleveland, Birmingham, Ala., for plaintiffs.

Harry L. Hopkins, James N. Nolan, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled civil action is before the Court on motion of defendant Coalite, Inc. (Coalite) for summary judgment in its favor with respect to all claims asserted herein by plaintiffs J.C. Box, James E. Box, Ralph R. Doss, Ray McCaleb, Robert B. Miles, Sr., Leon Farris, and Jack D. Smith.

The undisputed material facts of this case relevant to the motion for summary judgment are as follows. Plaintiffs are retired coal miners, and their last employer prior to retirement was Coalite. Prior to October 1983, Coalite was in business as a contract miner. Coalite's last mining occurred on October 3, 1983 and Coalite has not engaged in mining operations since that time and does not intend to resume operations. There has been no sale of Coalite's business; the corporation has essentially gone out of business. Coalite was a party to collective bargaining agreements with the United Mine Workers of America negotiated in 1978 and 1981 on behalf of certain employees and retired employees, including plaintiffs. These collective bargaining agreements are known as the National Bituminous Coal Wage Agreements. The agreements required Coalite to maintain an employee welfare benefit plan to provide medical benefits and life insurance to current and retired employees and their families. Coalite distributed a booklet to all employees concerning health benefits under the agreements. This summary plan description stated that the plan was maintained under a collective bargaining agreement. Additionally, the summary plan description provided that:

> [t]he right is reserved in the Plan for the Plan Sponsor to terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time, subject to the applicable provisions of the Group Policy.

Coalite was the Plan Sponsor. The 1981 UMWA collective bargaining agreement, to which Coalite was signatory, expired on September 30, 1984. Coalite is not a signatory to the 1984 agreement. After expiration of the 1981 agreement and upon notice, Coalite ceased providing health and life insurance benefits to eligible participants, including plaintiffs.

Plaintiffs bring this suit pursuant to the Employees Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq., alleging that Coalite is liable to them for continued payment of benefits under the employee welfare benefit plan set up by Coalite pursuant to the 1978 and 1981 National Bituminous Coal Wage Agreements

(Wage Agreements). Plaintiffs claim that their plan benefits are vested and payable to them for the remainder of their lifetimes. Defendant asserts that its duty to provide health and life insurance to plaintiffs terminated with the expiration of the 1981 National Bituminous Coal Wage Agreement.

■ Whether an employer is required to provide insurance benefits to its retirees beyond the expiration of the collective bargaining agreement depends upon the intent of the parties. *District 29, United Mine Workers v. Royal Coal Co.*, 768 F.2d 588, 590 (4th Cir.1985); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir.1983). Determining the intent of the parties is primarily a question of contract interpretation. *Royal Coal, supra.* Therefore, this Court must first examine the 1978 and 1981 Wage Agreements for any clear indication of the parties' intent.

■ Article XX, Section (c)(3)(i) of the 1978 Wage Agreement provides, in pertinent part:

> [E]ach signatory Employer shall establish an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees covered by this Agreement as well as pensioners, under the 1974 Pension Plan and Trust, whose last classified employment was with such Employer. The benefits provided pursuant to such plans shall be guaranteed *during the term of this Agreement* by each Employer at levels set forth in such plans. (Emphasis added)

The corresponding provision in the 1981 Wage Agreement reads, in pertinent part:

> Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees covered by this Agreement as well as pensioners, under the 1974 Pension Plan and Trust, whose last signatory classified employment was with such Employer. The benefits provided by the Employer to its eligible Participants pursuant to such plans shall be guaranteed *during the term of this Agreement* by that Employer at levels set forth in such plans. (Emphasis added).

It is evident to this Court that the intent of the parties, as demonstrated in the above quoted sections, was that the employer would be obligated to provide health benefits to its employees and retirees only "during the term of this Agreement." Upon expiration of each Agreement, the duty of the employer to provide the benefits under the contract likewise expires. This Court's interpretation of the 1978 and 1981 Wage Agreements is supported by the Fourth Circuit Court of Appeals' interpretation of the same provisions of the 1978 and 1981 Wage Agreements in *Royal Coal, supra.* The issue in *Royal Coal* was identical to the issue presented by plaintiffs herein. Royal Coal had been signatory to the 1978 and 1981 Wage Agreements, but not to the 1984 Wage Agreement. The Fourth Circuit looked to the language of the Agreements to glean the intent of the parties thereto and held that Royal Coal's obligation to provide health benefits and life insurance coverage to its retired and disabled coal miners under the 1978 and 1981 Wage Agreements did not extend beyond the expiration of those agreements. 768 F.2d at 592.

The *Royal Coal* Court also looked to the *en banc* decision in *District 17, United Mine Workers v. Allied Corp.*, 765 F.2d 412 (4th Cir.1985), which also construed Article XX, Section (c)(3)(i) of the 1978 Wage Agreement. In *Allied,* the defendant company sold its mining operations during the term of the 1978 Wage Agreement. However, it did not require the purchasers to assume its obligations under the collective bargaining agreement with respect to provision of health and other non-pension benefits. Allied's failure to require assumption of its duties led the Court to require Allied to continue to pay the benefits unless and until it could get its purchasers to take on that obligation. In

its discussion, the *en banc* majority indicated that it considered the employer's obligation to provide benefits terminated with the expiration of the labor contract, per Article XX, Section (c)(3)(i). More specifically, it stated:

> Although this obligation existed only for the life of the 1978 contract, which expired in 1981, it was perpetuated in the 1981 and 1984 contracts.

> Superficially, *it might appear that none of the defendants is liable for the retirees' benefits.* Because Allied had withdrawn from the coal business in 1980 it was not a signatory to the 1981 contract. Armco and Shannon Pocahontas, on the other hand, although signatories to the 1978 and 1981 contracts, agreed with Allied when they individually acquired the two mines in 1980 that they would not assume the obligations to pay benefits to Allied's retirees. In creating the 1974 Benefit Trust, the union and the coal operators anticipated a successor scenario and agreed that, under such circumstances, the 1974 Benefit Trust could not assume responsibility for payment of the benefits.

> If that were the complete picture, the answer to this dispute simply would be that after expiration of the 1978 agreement on March 27, 1981, no one had a duty to provide the retired miners with the disputed benefits.

*Id.* at 417. This Court lends its concurrence to the Fourth Circuit's interpretation of Article XX, Section (d)(3)(1) of the 1978 and 1981 Wage Agreements, as limiting a signatory employer's duty to pay health and other non-pension benefits to the term of the Agreement.

In the present case, Coalite's duty to pay health benefits to plaintiffs ceased upon expiration of the 1981 Wage Agreement by the terms of that Agreement. Accordingly, defendant Coalite is entitled to summary judgment in its favor as a matter of law with respect to all claims of plaintiffs asserted herein. An appropriate order in accordance with this Memorandum of Decision will be entered contemporaneously herewith.

## ORDER

The above entitled civil action is before the Court on the submitted motion of defendant Coalite, Inc. for summary judgment in its favor with respect to all claims asserted herein by plaintiffs J.C. Box, James E. Box, Ralph R. Doss, Ray McCaleb, Robert B. Miles, Sr., Leon Farris, and Jack D. Smith.

Upon consideration of such motion for summary judgment, the evidentiary matter offered in support and opposition thereto, the pleadings, briefs of counsel, and applicable law, the Court is of the opinion that defendant's motion for summary judgment is due to be granted with respect to all claims asserted in plaintiffs' complaint for the reasons stated in accompanying memorandum of decision. The Court expressly finds and determines that there is no genuine issue of material fact with respect to any claim asserted by plaintiffs against defendant, that defendant is entitled to judgment in its favor as a matter of law, and that there is no just cause or reason for delay in entry herein of final judgment in favor of defendant and against plaintiffs. Accordingly, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment in its favor with respect to all claims asserted by plaintiffs herein is hereby GRANTED and ENTERED, that plaintiffs have and recover NOTHING of defendant with respect to such claims, that final judgment in favor of defendant is hereby RENDERED and ENTERED in the above entitled civil action and that the costs of this cause are taxed against plaintiffs, for which let execution issue.

DONE and ORDERED this 23rd day of July, 1986.