945 F.2d 1205
 60 USLW 2211, 25 Collier Bankr.Cas.2d 802,
22 Bankr.Ct.Dec. 149,
Bankr. L. Rep. P 74,267,
14 Employee Benefits Cas. 1337
 In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV
Corporation, et al., Debtors.
LTV STEEL COMPANY, INC., BCNR Mining Corporation, Nemacolin
Mines Corporation, and Tuscaloosa Energy
Corporation, Plaintiffs-Appellees,
v.
UNITED MINE WORKERS OF AMERICA, Defendant-Appellee,
Joseph P. Connors, Sr., Donald E. Pierce, Jr., William
Miller, William B. Jordan and Paul R. Dean as
trustees of the United Mine Workers of
America 1974 Benefit Plan and
Trust, Defendants-Appellants.
 No. 246, Docket 90-5020.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1990.
Dismissed Dec. 17, 1990.
Motion For Reinstatement Jan. 23, 1991.
Decided March 18, 1991.
Appeal Reinstated April 18, 1991.
Decided Sept. 17, 1991.
 
 William F. Hanrahan, Groom and Nordberg, Washington, D.C., Michael Devorkin, John J. Rieck, Jr., Doar, Devorkin & Rieck, New York City, David W. Allen, General Counsel, United Mine Workers of America Health and Retirement Funds, Washington, D.C., for appellants.
 Sharon Katz, Karen E. Wagner, Davis Polk & Wardwell, Kaye, Scholer, Fierman, Hays & Handler, New York City, for appellees.
 Before OAKES, Chief Judge, MESKILL, Circuit Judge, and RESTANI,* Judge.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Southern District of New York, Kram, J., affirming a judgment of the United States Bankruptcy Court. 111 B.R. 399. The bankruptcy court, in orders dated August 1 and 4, 1988, concluded that the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. No. 100-334, 102 Stat. 610 (1988) ("Bankruptcy Protection Act" or the "Act") (codified at various sections of 11 U.S.C. § 1101 et seq.), did not require LTV Steel Company (LTV Steel), BCNR Mining Corporation, Nemacolin Mines Corporation and Tuscaloosa Energy Corporation (Mining Companies) (collectively, with LTV Steel, "LTV") to continue to pay health benefits to their retirees. The bankruptcy court also concluded that the United Mine Workers of America 1974 Benefit Plan and Trust (Benefit Trust) was responsible for the continued payment of retiree health benefits.
 
 
 2
 We have jurisdiction over this matter pursuant to 28 U.S.C. § 158(d). The bankruptcy court orders were certified pursuant to Bankruptcy Rule 7054(a) and Fed.R.Civ.P. 54(b) on January 15, 1991 by Judge Burton R. Lifland, Chief Judge of the United States Bankruptcy Court for the Southern District of New York. The orders are thus final within the meaning of 28 U.S.C. § 158(d).
 
 
 3
 We conclude that the Bankruptcy Protection Act does not require LTV to continue payment of the retiree benefits herein at issue. The three mining operations have ceased doing business, the collectively bargained 1984 National Bituminous Coal Wage Agreement (1984 Wage Agreement) has expired, and the continued provision of the retiree health benefits by the Benefit Trust was expressly considered under the 1984 Wage Agreement. We therefore affirm the decision of the district court.
 
 BACKGROUND
 
 4
 The relevant factual and procedural background to this action is summarized in our decision of December 17, 1990, reported at 922 F.2d 86. In that opinion we held that we lacked jurisdiction to hear this matter as it was then presented because the bankruptcy court orders were not final judgments. We remanded the action for certification of the orders pursuant to Rule 54(b). On March 18, 1991, in a decision reported at 928 F.2d 63, we denied the Benefit Trust's Motion for Reinstatement when we were presented with a statement of finality that failed to comply with the requisites of Rule 54(b).
 
 
 5
 The Benefit Trust has petitioned for reinstatement once again. The order of the bankruptcy court now comports with Rule 54(b) and we are satisfied that these orders are final and our jurisdiction is properly invoked. We, therefore, confront the issue originally presented to us on September 19, 1990. We address whether the Bankruptcy Protection Act requires LTV to continue the provision of health benefits to retirees of the Mining Companies after they have ceased operations and the Wage Agreement providing for the payment of those benefits has expired.
 
 DISCUSSION
 
 6
 The Bankruptcy Protection Act amended section 608 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act, 1987, to read in pertinent part as follows:
 
 
 7
 (a)(1) Subject to paragraphs (2), (3), (4), and (5), and notwithstanding title 11 of the United States Code, the trustee shall pay benefits to retired former employees under a plan, fund, or program maintained or established by the debtor prior to filing a petition (through the purchase of insurance or otherwise) for the purpose of providing medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.
 
 
 8
 ....
 
 
 9
 (3) The trustee shall pay benefits in accordance with this subsection until--
 
 
 10
 (A) The dismissal of the case involved; or
 
 
 11
 (B) the effective date of a plan confirmed under section 1129 of such title which provides for the continued payment after confirmation of the plan of all such benefits at the level established under paragraph (2) of this subsection, at any time prior to the confirmation of the plan, for the duration of the period the debtor (as defined in such title) has obligated itself to provide such benefits.
 
 
 12
 ....
 
 
 13
 (c) This section is effective with respect to cases commenced under chapter 11, of title 11, United States Code, in which a plan for reorganization has not been confirmed by the court and in which any such benefit is still being paid on October 2, 1986, and in cases that become subject to chapter 11, title 11, United States Code, after October 2, 1986 and before the date of the enactment of the Retiree Benefits Bankruptcy Protection Act of 1988.
 
 
 14
 Pub.L. No. 99-591, tit. VI, 100 Stat. 3341-74 as amended by Bankruptcy Protection Act, Pub.L. No. 100-334, § 3(a), 102 Stat. 613 (codified at 11 U.S.C. § 1106-note). LTV filed for bankruptcy under Chapter 11 and has not obtained dismissal of the case or approval of any plan of reorganization under section 1129. LTV was still paying benefits on October 2, 1986, the date that triggered the application of the Act. Based on these facts, the Benefit Trust asserts that LTV must continue to pay the retiree benefits until a plan of reorganization is approved. We disagree.
 
 
 15
 The Act expressly states that the trustee in bankruptcy, here LTV, the debtor-in-possession, must continue to "pay benefits to retired former employees under a plan, fund, or program maintained or established by the debtor prior to filing a petition [for bankruptcy]." Thus, we must analyze the "plan, fund, or program maintained or established" by LTV before it filed for bankruptcy in order to determine the trustee's obligation to LTV's retired former employees.
 
 
 16
 The 1984 Wage Agreement provided for the payment of retiree benefits. Article XX of that document is the precise section that governed the continued provision of benefits. Section (a) of Article XX discusses the general purposes of Article XX. Section (b) discusses the 1950 Plans and Trusts, the 1974 Plans and Trusts were covered in section (c), and section (d) of Article XX discusses the term and amounts of employer contributions. Section (a) states, in pertinent part:
 
 
 17
 This Article makes provision for pension, health and other benefits for Employees covered by this Agreement,.... The benefits to be provided are as set forth under separate plans and trusts referred to in Sections (b) and (c) of this Article.
 
 
 18
 ....
 
 
 19
 The general purpose of the plans referred to in this Article shall be to provide health care for working and retired miners and their dependents; pensions for miners upon their retirement; health care and financial support for eligible disabled miners; and financial support for surviving spouses and surviving dependents provided by each of the Trusts and Plans referred to in this Article.
 
 
 20
 Except as otherwise specifically set forth in this Article, it is agreed that the Trusts referred to in this Article are irrevocable Trusts created pursuant to and within the scope of Section 302(c) of the Labor Management Relations Act, 1947, and shall endure as long as the purposes for their creation shall exist.
 
 
 21
 The Health and Retirement Benefits provision of the Wage Agreement continues to describe, in detail, the 1974 Benefit Trust. It states: "The 1974 Benefit Trust provides certain health and other benefits, not including pension benefits, and the terms and conditions under which those benefits will be provided are as set forth in the plan under the 1974 Benefit Trust and under the terms of this Article."In subsection (3)(ii) of section (c), the plan states:
 
 
 22
 The 1974 Benefit Plan and Trust provides health and other non-pension benefits during the term of this Agreement, to any retired miner under the 1974 Benefit Pension Plan or any successor plan(s) thereto who would otherwise cease to receive the health and other non-pension benefits provided herein because the signatory Employer (including successors and assigns) for whom such miner last worked in signatory classified employment is no longer in business.... For purposes of determining eligibility under the 1974 Benefit Plan and Trust, an Employer is considered to be "no longer in business" only if the Employer
 
 
 23
 (a) has ceased all mining operations and has ceased employing persons under this Wage Agreement, with no reasonable expectation that such operations will start up again; and
 
 
 24
 (b) is financially unable (through either the business entity that has ceased operations as described in subparagraph (a) above, including such company's successors or assigns, if any, or any other related division, subsidiary, or parent corporation, regardless of whether covered by this Wage Agreement or not) to provide health and other non-pension benefits to its retired miners and surviving spouses.
 
 
 25
 In sum, the Mining Companies were obligated to pay retiree benefits under the terms of the Wage Agreement. The Benefit Trust was to pay benefits if the Mining Companies were no longer in business. No provision in the agreement discusses coverage upon the expiration of the Wage Agreement without adoption of a subsequent agreement. The Benefits Trust contends that because LTV, as parent to the signatory Mining Companies, is not "out of business" under the narrow definition set forth in the 1984 Wage Agreement, LTV must continue to pay the retiree benefits during LTV's reorganization.
 
 
 26
 There are several factors militating against this interpretation. Section 10 of the General Description of the Health and Retirement Benefits, under the heading "Health Care," in Article XX, states "[h]ealth care benefits are guaranteed during the term of this Agreement subject to the terms of this Agreement at the level of benefits provided in the 1950 Benefit Plan, the 1974 Benefit Plan, and the Employer Benefit Plan." (emphasis added). This portion of the Wage Agreement suggests that the parties are bound by the provisions of the Wage Agreement only as long as the Wage Agreement itself is effective.
 
 
 27
 The expiration date of the 1984 Wage Agreement was clearly set forth in Article XXIX. It states in pertinent part:
 
 
 28
 Except as provided in Article XXVIII, section (b) (Severability Clause), this Agreement shall not be subject to termination by either party signatory hereto prior to 11:59 p.m., January 31, 1988 provided, however, that either the parties of the first part or the party of the second part may terminate this Agreement on or after 11:59 p.m., January 31, 1988 by giving at least sixty days written notice to the other party of such desired termination date.
 
 
 29
 The language of the above quoted provisions indicates that once LTV terminated the Wage Agreement upon its expiration in 1988, health benefits were no longer guaranteed under the Wage Agreement. There is no intimation that the parties intended LTV's obligation to continue beyond the life of the Wage Agreement. LTV notified the employees of the Mining Companies that it would cease operations without continuance in 1986. LTV notified the Benefit Trust in November and again in December of 1988 that the 1984 Wage Agreement would terminate after January 31, 1988. The 1984 Wage Agreement ceased to be effective after that date. Thus the parties were no longer bound by it as of that date. If LTV is not bound by the terms of the Wage Agreement, LTV has no obligation to pay the retiree health benefits. The Benefit Trust points to no other agreement or provision within the 1984 Wage Agreement that would suggest a contrary result.
 
 
 30
 Based on the analysis set forth above, the "plan, fund, or program maintained or established" by the Mining Companies at the time LTV sought protection from creditors under Chapter 11 can be described simply. The Mining Companies guaranteed payment of retiree benefits during the term of the Wage Agreement. The Wage Agreement expired immediately after January 31, 1988. Regardless of the obligations of any other parties, neither the Mining Companies nor LTV Steel were obliged to pay retiree benefits after the termination of the Wage Agreement. The 1984 Wage Agreement was the plan in effect at the time LTV sought protection under Chapter 11. The Bankruptcy Protection Act requires that during reorganization the parties continue to provide benefits according to the plan in effect at the time of the declaration of bankruptcy; the Bankruptcy Protection Act does not alter the terms of that plan. As noted, the plan does not require LTV to pay for benefits after the 1984 Wage Agreement expired. LTV Steel and the Mining Companies, therefore, are not obligated by the Wage Agreement or by statute to continue to pay for retiree benefits. The Benefit Trust has conceded that if it is determined that LTV is not required to pay the retiree health benefits the Benefit Trust is so required.
 
 
 31
 Our interpretation of the Wage Agreement is consistent with the reasoning of other courts that have confronted the issue of responsibility for retiree benefits under the Wage Agreement. The Royal Coal cases denote this.
 
 
 32
 In District 29, United Mine Workers of America v. Royal Coal Company (Royal Coal I), 768 F.2d 588 (4th Cir.1985), it was determined that the coal company's responsibility to provide health benefits to retired employees under a negotiated Wage Agreement terminated with the expiration of that Wage Agreement. Although this decision was based on the National Bituminous Coal Wage Agreements of 1978 and 1981, those agreements are substantially similar to the 1984 Wage Agreement at issue herein. In Royal Coal I, as in the instant case, the company ceased mining operations during the term of the wage agreement in effect at the time. The company did not enter into a subsequent wage agreement to provide health benefits to retired employees. Id. at 589. The retired employees sued the coal company and the 1974 Benefit Trust to force one of the two defendants to continue to provide the health benefits.
 
 
 33
 In deciding Royal Coal I, the Fourth Circuit looked to the intent of the parties when they entered into the contract to determine whether they intended the employer's obligations to continue beyond the expiration of the collective bargaining agreement. Id. at 590. The court, after carefully examining the language of the Wage Agreements and relevant case law, held that the company's "obligation to provide health benefits ... to its retired ... coal miners under the 1978 and 1981 Wage Agreements does not extend beyond the expiration of those Agreements." Id. at 592; see also District 17, Dist. 29, Local Union 7113, and Local Union 6023, United Mine Workers of America v. Allied Corp., 765 F.2d 412 (4th Cir.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985).
 
 
 34
 In 1987, building on Royal Coal I, the Fourth Circuit again confronted the issue of the continued provision of retiree health benefits. In District 29, United Mine Workers of America v. United Mine Workers of America 1974 Benefit Plan & Trust (Royal Coal II), 826 F.2d 280 (4th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988), the court held that the 1974 Benefit Trust was required to provide retiree health benefits when the employer was still "in business" as defined in the Wage Agreement, but was no longer legally obligated to pay the benefits. Id. at 283. Again the court looked to the intent of the parties and concluded that "the intentions of the parties in providing for retirement health benefits was to guarantee their provision for life." Id. at 282. After acknowledging that the former employer was no longer legally responsible for the provision of retiree health benefits, the court held that "[t]o construe the contract to create no liability on the part of the 1974 Benefit Plan would have the effect of defeating the expressed intention to provide lifetime benefits." Id. at 283. The court thereafter found the 1974 Benefit Trust responsible for the continued provision of health benefits.
 
 
 35
 As noted above, the 1984 Wage Agreement is substantially similar to the 1978 and 1981 Wage Agreements with respect to the plan for the provision of retiree health benefits. The plans established under these Wage Agreements have been interpreted consistently by the courts, and it uniformly has been held that an employer is not legally responsible for the provision of retiree health benefits after the expiration of a wage agreement. See Royal Coal II, 826 F.2d 280; Royal Coal I, 768 F.2d 588; United Mine Workers of America Int'l Union by Rabbit v. Nobel, 720 F.Supp. 1169 (W.D.Pa.1989), aff'd sub nom. Appeal of Bituminous Coal Operators' Ass'n, 902 F.2d 1558 (3d Cir.1990), cert. denied sub nom. Bituminous Coal Operators' Ass'n v. United Mine Workers of America Int'l Union by Rabbit, --- U.S. ----, 111 S.Ct. 1102, 113 L.Ed.2d 212 (1991); Schifano v. United Mine Workers of America 1974 Benefit Plan & Trust, 655 F.Supp. 200 (N.D.W.Va.1987). These same courts have held that the Benefit Trust is liable for the continued provision of retiree benefits. Thus, even before the enactment of the Bankruptcy Protection Act courts interpreted the plan for the provision of retiree health benefits to obligate the employer only as long as the Wage Agreement was in effect; the Benefit Trust was required to provide the benefits thereafter. This is consonant with the conclusion we reach today.
 
 
 36
 The legislative history of the Bankruptcy Protection Act does not suggest an interpretation other than the one we have reached. The Bankruptcy Protection Act clearly was designed to "provide specific protections under the Bankruptcy Code for certain insurance benefits of retired employees." S.Rep. No. 119, 100th Cong., 2nd Sess. 3, reprinted in 1988 U.S.Code Cong. & Admin.News 683, 685. As numerous legislators noted, the Act was created to "insure that promises made to employees during their working years are not broken during their retirement years." 133 Cong.Rec. H1257 (daily ed. Mar. 11, 1987) (remarks by Representative Frost). Central to the discussion was the belief that companies in bankruptcy could not legally cease to provide benefits demanded under the collectively bargained contracts in effect. See, e.g., 133 Cong.Rec. H1262 (daily ed. Mar. 11, 1987) (remarks by Representative Eckart) ("Bankruptcy court has become an increasingly popular vehicle allowing companies to renege on their contractual obligations to their retired workers."); id. (remarks by Representative Regula) ("Companies must be put on notice that they cannot unilaterally ignore their legal obligations to their former employees."); 132 Cong.Rec. H5259 (daily ed. July 31, 1986) (remarks by Representative Nowak) ("I do not believe that the bankruptcy laws were intended to shield companies and allow them to breach their legal duties to individuals in this manner.").
 
 
 37
 Here the retired employees are guaranteed provision of health benefits for life under the collective bargaining agreement. That agreement has been interpreted to mean that if the Wage Agreement terminates, the benefits are still provided but they are provided by the Benefit Trust, instead of by the companies. The Mining Companies ceased operations in 1986. The 1984 Wage Agreement expired in 1988. Upon its expiration, the burden for the provision of retiree health benefits shifted to the Benefit Trust. There is no cessation of benefits, there is no termination of benefits. Whether the plan is able to fund fully the benefits is a separate issue. The retired employees are receiving exactly what they bargained for in the 1984 Wage Agreement.
 
 CONCLUSION
 
 38
 In sum, the Bankruptcy Protection Act requires that companies in Chapter 11 bankruptcy continue to provide benefits to retired employees in conformity with the plan or fund in existence at the time bankruptcy was declared. The 1984 Wage Agreement was the plan in effect when LTV sought protection under Chapter 11, thus the terms of the 1984 Wage Agreement govern the provision of retiree benefits. According to the terms of the Wage Agreement, the Mining Companies were responsible for the provision of the benefits during the term of the Wage Agreement. When that Agreement expired, however, that obligation shifted to the Benefit Trust. The Benefit Trust is now responsible for the continued provision of the retiree health benefits. This conclusion is consistent with our reading of the Bankruptcy Protection Act, the legislative history to that Act, and the relevant case law.
 
 
 39
 RESTANI, Judge: I dissent.
 
 I.
 
 40
 According to the plain language of section 3 of the Retiree Benefits Bankruptcy Protection Act of 1988 ("Bankruptcy Protection Act" or "the Act"), "the trustee shall pay [health] benefits to retired former employees under a plan, fund, or program maintained or established by the debtor prior to filing a petition, ... until ... the dismissal of the case involved; or ... the effective date of a plan confirmed under section 1129...."[1] The Act also provides that the level of benefits may be modified if there is an agreement on modification, or the bankruptcy court finds modification is necessary to reorganization and "the balance of equities clearly favors the modification." Bankruptcy Protection Act § 3(a)(1)(C); 11 U.S.C. § 1113(b)(1)(A). LTV et al., debtors in possession, have all the rights and duties of a "trustee," with certain exceptions not relevant to this appeal. 11 U.S.C. § 1107(a), 1114(e)(1).
 
 
 41
 The district court decided, in essence, that although the Act applies to health benefits that are terminable at will, it does not apply to health benefits that are provided pursuant to a contract obligation which is interpreted to have expired. I would reverse this decision as I do not find any intent on the part of Congress to distinguish between a contract right which never existed and one which terminated.[2]
 
 
 42
 In reaching its conclusion that LTV is not responsible for the continued payment of LTV retiree health benefits, the district court did not quote the statute. Rather, the court relied on two pieces of legislative history which do not address whether a debtor in possession continues to be liable for benefits after the expiration of a bargained for collective agreement. The first is a comment of Senator Byrd to the effect that companies in Chapter 11 "have a legal and contractual obligation to their retirees ... This legislation will not guarantee continuation of these benefits, but it will provide a mechanism that will allow the retirees' position to be heard ..." 133 Cong.Rec. 3,732 (1987). The second comment was that of Senator Heinz that "[t]he bill will protect retirees from unilateral termination of benefits by a company filing a Chapter 11 bankruptcy petition." 134 Cong.Rec. 12,700 (1988). The district court then concluded that "[t]he legislative history reveals that the Retiree Benefits Bankruptcy Protection Act of 1988 does not require LTV to continue to pay retiree benefits in this case." Joint Appendix at 655. It is apparent from their lack of reliance on the statute that both the district court and LTV believe the bare words of the statute call for LTV to continue paying benefits. The majority takes a different approach, which at the outset focuses on statutory language, but it applies the statutory language in a circular manner, thereby defeating the purpose of the statute.
 
 
 43
 Furthermore, both the district court and the majority find that, despite the Act, the Benefit Trust, rather than LTV, must pay retiree benefits under the terms of the Wage Agreement. They base this conclusion primarily on the Royal Coal cases.[3] In the Royal Coal the Fourth Circuit held that a solvent mining company which had sold all of its mining operations without transferring to the purchasers its obligations to pay retiree health benefits, and which did not sign the 1981 Wage Agreement, was not liable for such benefits after the expiration of the 1981 Wage Agreement. See Royal Coal I, 768 F.2d at 592. The Benefit Trust, which is funded by Wage Agreement signatory employers, was held liable for the health benefits on the basis that the Wage Agreement intended funding of lifetime benefits. The court reached this conclusion despite contract wording which indicated not only that the Benefits Trust's obligation applies "during the terms of this agreement" but also that the obligation depends on both cessation of operations and inability to pay on the part of the employer and its successor. Royal Coal II, 826 F.2d at 282-83.
 
 
 44
 The Royal Coal cases, however, deal with the interpretation of the Wage Agreement and not interpretation of the Retiree Protection Act, which was enacted after the Royal Coal case were decided. Furthermore, the Act specifically addresses the event of bankruptcy. The Act provides that the "trustee" (a successor to the employer) must pay. Under Royal Coal the Benefit Trust's obligation arises because the obligation of the employer (and its successor) ceases. If one accepts the reasoning of the Royal Coal cases, the statute cannot be satisfied by payment from the Benefit Trust. That is, payment by the Benefit Trust cannot be payment by the trustee.
 
 
 45
 The legislative history cited by the district court and, more extensively, by the majority, is consistent with the plain language of the Act. The district court and majority, however, have seized upon the concept of the "unilateral" nature of certain terminations of benefits, a concept found in the Heinz statement quoted supra at 1211. This reliance is misplaced. Under the facts at hand, LTV's decision not to continue its 1984 Wage Agreement obligations to the retirees was no less unilateral than the decision to terminate "at will" benefits, and certainly LTV's original attempt to reject the Wage Agreement pursuant to the trustee's ordinary bankruptcy powers was a unilateral action. But even more persuasive is the absence of the limiting word "unilateral" from the statutory language. Of course the Act does protect workers against unilateral termination of benefits, but the plain language of the statute does not limit it to this purpose only. As explained by the sponsors of the legislation, the Act applies whether or not a collective bargaining agreement is in effect. "The provisions of section 3 apply to union and nonunion retirees.... benefits subject to these standards are not required to arise from a collective bargaining agreement." 134 Cong.Rec. 12,698 (1988) (statement of Sen. Metzenbaum) (emphasis added). "This legislation protects retired employees who are covered by a collective bargaining agreement, as well as those where no collective bargaining agreement is in effect." 133 Cong.Rec. 21,099 (1987) (statement of Sen. Heflin) (emphasis added).
 
 
 46
 The most telling passage of legislative history is the following:
 
 
 47
 [The bill] ... requires a company to continue paying for these [retiree health] benefits even after the termination of a collective bargaining agreement. Only if a company can prove a modification is absolutely necessary and that it treats everyone fairly can a court, after a hearing, order any modification.
 
 
 48
 Retiree Benefits Security Act of 1987: Hearings on S. 548 Before the Subcomm. on Courts and Administrative Practice of the Senate Comm. on the Judiciary, 100th Cong., 1st Sess. 14 (1987) (statement of Sen. Metzenbaum). This passage, unlike those cited by the district court, is directly on point. Appellees argue that Senator Metzenbaum was referring to hypothetical agreements which require continuation of retiree health benefits after the agreement terminates. Senator Metzenbaum's statement, however, is replete with references to LTV and its contracts. His statement was without limitation with regard to the terms of any contract. Therefore, I cannot agree with the majority that "[t]he legislative history of the Bankruptcy Protection Act does not suggest an interpretation other than the one we have reached." At 1210.
 
 
 49
 Accordingly, the Act continues all retiree health benefits which are in effect immediately prior to bankruptcy. The Act also states that termination or modification of benefits is not permitted prior to reorganization unless either the trustee and an authorized representative of the affected parties agree to the modification, or if the trustee convinces the court that such modification is necessary and equitable. The clear purpose of the Act is to give the bankruptcy court power to resolve the competing interests of retirees, debtors and creditors, if agreement as to continuation and level of benefits cannot be reached. The health benefits of retirees are not to be terminated by any action until the bankruptcy court has time to act. The passages of legislative history cited by the majority do not reveal an intent other than that reflected in the plain language of the statute; that is, despite contractual rights or lack thereof, benefits are to continue on an interim basis until the parties agree or until the bankruptcy court makes the determinations specified in the Act. If Congress intended some distinction between former employees without contracts and those whose contractual rights had expired, it simply did not say so. If it had any distinction among employees in mind, it was a distinction between employees of companies which seek protection under the bankruptcy laws and employees of companies who do not. I believe that the majority errs in reading into the statute special exemptions applicable to bargained for benefits, not enunciated by Congress.
 
 II.
 
 50
 I believe the majority also erred in relying in any way on the presence of the Benefit Trust with regard to interpretation of the statute. The Benefit Trust is intended as a last resort for the funding of retiree health benefits. Royal Coal II finds the Benefit Trust liable, despite contract language to the contrary, because of the overall purpose of the contract, that is, retirees must be provided for. Here, the Act spells out how provision for retirees is to be made. Moreover, although successor Wage Agreements require funding of the Benefit Trust to meet retiree health benefit requirements, it has not been established that current and future signatories will be able to bear the burden of former signatories throughout the lifetimes of the retirees. This factual issue is not resolved. In any case, given the plain language of the statute, I would find the status of the Benefit Trust irrelevant as to statutory construction.
 
 
 51
 I do not reach the issue of the contractual liability of the Benefit Trust. If LTV remains obligated to pay benefits under the statutory criteria, the obligation of the Benefit Trust does not arise.[4] The bankruptcy court has not made the findings which would resolve this issue.
 
 CONCLUSION
 
 52
 I would find LTV liable for payment of benefits unless the bankruptcy court makes the findings required for modification of benefits, as set forth in Section 3(a)(2) of the Retiree Protection Act.
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 The Bankruptcy Protection Act is codified in the note following 11 U.S.C. § 1106. It was enacted in Public Law Number 99-591 on October 30, 1986 and amended by Public Law Numbers 100-41 (May 15, 1987), 100-99 (August 18, 1987) and 100-334 (June 16, 1988)
 
 
 [2]
 See infra note 3 and accompanying text (regarding interpretation of the Wage Agreement at issue)
 
 
 [3]
 District 29, United Mine Workers of America v. Royal Coal Co. (Royal Coal I), 768 F.2d 588 (4th Cir.1985) and District 29, United Mine Workers of America v. United Mine Workers of America 1974 Benefit Plan & Trust (Royal Coal II), 826 F.2d 280 (4th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988)
 
 
 [4]
 It is interesting to note that even if one accepts the holdings of the Royal Coal cases, for companies in bankruptcy the statute restores in large measure the original language of the Wage Agreement, which premises the liability of the Benefit Trust on the inability of the employer to pay