PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY QUESENBERRY; PAUL E.
HOLLANDSWORTH; WALTER E.
VIERS; CURTIS L. COX; ROBERT K.
GOAD; SHIRLEY I. TOLBERT, on
behalf of themselves and all other
persons similarly situated;
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA; UNITED
AUTO WORKERS 2069,

      *Plaintiffs-Appellees,*

      v.

VOLVO TRUCKS NORTH AMERICA
RETIREE HEALTHCARE BENEFIT PLAN;
VOLVO GROUP NORTH AMERICA,
LLC,

      *Defendants-Appellants.*

No. 10-1491

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(1:09-cv-00022-jpj-pms)

Argued: May 13, 2011

Decided: July 11, 2011

Before WILKINSON, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Agee joined.

## COUNSEL

**ARGUED:** Thomas Joseph Bender, Matthew John Hank, LITTLER MENDELSON PC, Philadelphia, Pennsylvania, for Appellants. Julia Penny Clark, BREDHOFF & KAISER, PLLC, Washington, D.C., for Appellees. **ON BRIEF:** Kimberly M. Sanchez-Ocasio, BREDHOFF & KAISER, PLLC, Washington, D.C.; Michael Nicholson, Michael F. Saggau, Detroit, Michigan, for Appellees.

## OPINION

WILKINSON, Circuit Judge:

The question in this case is whether a collective bargaining agreement permitted Volvo to make unilateral changes to the health benefits of retirees from its New River Valley assembly plant after the agreement expired. After a jury determined that the parties did not intend to grant Volvo that power, the district court ordered the restoration of any health benefits lost due to Volvo's changes and enjoined Volvo from making such modifications in the future. We conclude as a matter of law that Volvo was not permitted to make unilateral modifications to the retirees' health benefits after the expiration of the collective bargaining agreement unless it followed the mechanism agreed to by both parties in that agreement. Because Volvo did not and could not employ that mechanism in this case, we affirm.

### I.

The collective bargaining agreement ("CBA") at issue here was the latest in the long history of negotiations between

Volvo Group North America, LLC ("Volvo") and the union representing workers at Volvo's New River Valley assembly plant ("NRV") in Pulaski County, Virginia. Employees and retirees from NRV have been represented by the United Automobile, Aerospace, and Agricultural Workers of America ("UAW") and UAW Local 2069 (collectively, "the Union") since the mid-1970s. Starting with the 1984 CBA and up through the 2005 CBA, each collective bargaining agreement provided that health benefits for pension-eligible employees "will be continued into retirement with [Volvo] making the full contribution." None of the agreements reserved a right for Volvo to modify retiree health benefits unilaterally. Benefits were subject to some changes, however, in subsequent bilateral agreements. Three different CBAs in the 1990s provided for health insurance coverage modifications (including both increases and decreases in benefits, such as an increase in the co-pay for prescription drugs) that applied both to active employees and to retirees.

Volvo and the Union agreed to a new collective bargaining agreement in 2005 that again provided for health benefits, both for current employees and for employees who retired in 1988 and thereafter. That agreement crystallized the health insurance coverage terms for retirees in two separate provisions of the 2005 CBA's Welfare Benefit Program, namely the Coverage and Cost paragraphs. The former stated generally that Volvo would "continue coverage under the Volvo-UAW health, dental and prescription drug programs" for retiree participants "for the duration of this Agreement."

The Cost paragraph then fleshed out some of the particulars, including the limits on Volvo's financial obligations under the Coverage paragraph. Volvo's liability for retiree health insurance expenses was limited to an average cost of $13,606 per year for each non-Medicare-eligible retiree and $3,292 for each Medicare-eligible retiree. To resolve the problems posed by potential costs in excess of those caps, Volvo agreed to create a Voluntary Employees' Beneficiary

Association (VEBA) trust, to which it was required to contribute a total of $3.943 million, including $1.585 million on the last day of the 2005 CBA's term in 2008. Of that amount, Volvo in 2005 projected that only $400,000 would be necessary for cumulative above-cap costs until the agreement's expiration on January 31, 2008. The VEBA assets were to be held "for the exclusive purpose of paying all costs incurred by Retiree Participants under the Volvo Plan that exceed the limits set forth above."

The Cost paragraph then described a negotiated mechanism to deal with healthcare costs too burdensome even for the VEBA trust. In the event that the VEBA trust was projected to be exhausted within a calendar year, Volvo and the UAW were required to meet to discuss how to reduce healthcare costs. If those negotiations proved unsuccessful, Volvo could charge each retiree for any costs over the caps according to a formula set forth in the Cost paragraph. The provision did not specify any other relief for Volvo in the event that the costs of health benefits proved overly burdensome.

The Cost provision initially contained a durational limit like the Coverage provision, but this was deleted at the request of the UAW. Volvo later claimed that this deletion was to prevent redundancy with similar language in the Coverage provision, but a contemporaneous Volvo email did not explain the deletion under this theory. The Union, however, had requested its deletion on the grounds that such a limitation would destroy the effectiveness of the VEBA trust, which it understood to survive the expiration of the agreement.

At the start of the collective bargaining negotiations that ultimately led to the 2008 CBA, Volvo announced that it would not engage in negotiations regarding retiree health benefits and that it intended to restructure those benefits unilaterally. Volvo did not claim at that point that the VEBA trust was projected to be exhausted within one year. In response, NRV employees went on strike for approximately seven

weeks in early 2008, after which the parties agreed on another collective bargaining agreement on March 17, 2008. The 2008 CBA does not contain a negotiated plan of health benefits for employees who retired before March 17, 2008, and on December 31, 2008, Volvo announced that it would unilaterally restructure retiree coverage, effective March 1, 2009 for non-Medicare-eligible retirees and July 1, 2009 for Medicare-eligible retirees. This restructuring included new deductibles, increased co-payments and co-insurance, and a new monthly premium for non-Medicare-eligible retirees. Volvo also terminated coverage for Medicare-eligible retirees and replaced their insurance with a $3500 annual health reimbursement account.

On January 21, 2009, plaintiffs filed a complaint under section 301 of the Labor Management Relations Act (LMRA) and section 502(a) of the Employee Retirement Income Security Act (ERISA) on behalf of a class of several hundred retirees who had retired before the 2008 CBA's effective date. The retirees sought a permanent injunction preventing Volvo from making any unilateral modifications to retiree health benefits in the future, and an award of the health benefits the retirees would have already received but for Volvo's unilateral changes.

The district court denied Volvo's motion to strike the jury demand for the retirees' LMRA § 301 claim, concluding that it sounded in law rather than equity. The court concluded that the ERISA claim was equitable, however, and later made its own judgment on the ERISA issue under Fed. R. Civ. P. 52. After trial, the court submitted the LMRA claim to the jury to decide whether it was the joint intent of Volvo and the Union that retiree health insurance benefits could not be unilaterally changed by Volvo after the expiration of the 2005 CBA.

The jury found in favor of the retirees, and the district court entered judgment on the LMRA claim, stating that "Volvo and the Volvo Plan are hereby permanently enjoined from

unilaterally terminating or modifying the health care benefits provided to the Class and are directed and required to restore such benefits to the extent of any unilateral changes previously made." The district court later awarded the retirees attorneys' fees and ruled in their favor on the ERISA claim as well.

## II.

To determine whether an employer must provide benefits to its retirees after the expiration of the relevant collective bargaining agreement, we look to the familiar foundation of contract law, namely "the parties' intent as expressed in their agreement." *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989). Whether the parties intended the employer's obligation to provide benefits to survive the collective bargaining agreement therefore "is primarily a question of contract interpretation." *Dist. 29, United Mine Workers v. Royal Coal Co.*, 768 F.2d 588, 590 (4th Cir. 1985). And "as with any contract interpretation, we begin by looking at the language of the agreement for any clear manifestation of the parties' intent." *Keffer*, 872 F.2d at 62.

## III.

Volvo strenuously argues that the language of the 2005 collective bargaining agreement unambiguously forecloses any obligation to provide retiree health benefits after its expiration. It points specifically to durational language in the Coverage paragraph as evidence of the parties' allegedly clear intent. That paragraph states in part that Volvo "will continue coverage under the [Volvo Plan] for the duration of this Agreement." Were the Cost paragraph not in the agreement, Volvo would have a compelling point. *See Royal Coal*, 768 F.2d at 592 (concluding that the durational language in the collective bargaining agreements at issue absolved the employer of its obligation to provide health benefits beyond the term of the agreements). But the view that this one phrase

in this particular collective bargaining agreement conclusively resolves the issue of when Volvo's duty to provide retiree health benefits ends faces several difficulties.

## A.

For starters, Volvo's argument that the durational clause terminates its obligation to provide retiree health benefits fails to take account of the 2005 CBA in its entirety and the Cost paragraph in particular. We must construe contracts "as a whole," *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005), and the Cost paragraph makes no sense unless it operates as a limitation on Volvo's right to modify benefits beyond the term of the agreement. Specifically, the Cost paragraph of this collective bargaining agreement contains a negotiated mechanism that explicitly limits Volvo's ability to make unilateral changes.

The Cost paragraph, which provides for the VEBA trust in order to pay for costs in excess of the agreed-upon coverage limits, allows Volvo to make one relatively minor change to retirees' health benefits under certain conditions. The only unilateral change Volvo may make is to charge the retirees a monthly premium to cover costs in excess of the agreed limits, and that premium is determined by formula. Even then, Volvo cannot make changes unless the VEBA is projected to be exhausted within one year and Volvo and the Union are unable to agree on benefits reductions to reduce the premium costs which Volvo pays for the employees.

It is almost inconceivable, however, that this negotiated mechanism would be triggered during the scope of the 2005 CBA. First of all, Volvo itself projected that the trust would not be exhausted until 2014, some nine years after an agreement that was contracted to last only three. More importantly, Volvo was required to make a $1.585 million contribution to the VEBA on the very last day of the 2005 CBA's term. It would be almost impossible to project the VEBA to run out

during the 2005 CBA when roughly 40% of the trust's corpus was to be deposited on that final day, and Volvo does not contend that either party contemplated that unlikely scenario. To contend that the VEBA and its negotiated mechanism were good only until the expiration of the 2005 CBA thus requires an overactive imagination.

We find further support for the conclusion that the negotiated mechanism—and therefore the obligation to provide retiree health benefits—extends beyond the expiration of the 2005 CBA in the fact that the Cost paragraph, unlike the Coverage paragraph, does not contain any language that might imply a durational limitation. To the contrary, the Cost paragraph states that Volvo "will pay the cost of continued coverage under the Volvo Plan for Retiree Participants." This provision was initially drafted with the qualification that it was "for the duration of this Agreement," but the Union requested that it be removed because it would render the $1.585 million VEBA deposit on the last day of the 2005 CBA a nullity. Volvo complied with this request, and we will not read any durational language back into this paragraph.

## B.

Despite these difficulties, Volvo relies heavily on our decision in *District 29, United Mine Workers v. Royal Coal Co.* in its argument that the durational language in the Coverage provision is dispositive. In that case, we interpreted two sequential collective bargaining agreements which stated that "[t]he benefits provided [by the employer] shall be guaranteed *during the term of this Agreement*" by that employer. 768 F.2d at 590; *see also id.* at 591. We held that "Royal's obligation to provide health benefits and life insurance coverage to its retired and disabled coal miners . . . does not extend beyond the expiration of those Agreements." *Id.* at 592. But the *Royal Coal* CBAs contained nothing analogous to the negotiated mechanism in this agreement, which is meaningless if it does not extend past the expiration of the CBA.

*Royal Coal* thus does not control the interpretation of this contract.

The bargain that Volvo and the Union adopted in 2005 is, however, analogous to the collective bargaining agreement addressed in *Keffer v. H.K. Porter Co.* There, this Court construed an agreement that provided for retiree health benefits until those retirees were eligible for Medicare. 872 F.2d at 62. We found, not unlike in this case, that linking eligibility for those benefits to an event that would almost certainly occur after the expiration of the agreement signaled the parties' intent to continue retirement health benefits notwithstanding expiration. *Id.* at 63.

Even more importantly, we found that the parties had qualified the continuation of those benefits by stating that they would continue until the expiration date "and thereafter, subject to negotiations between the Company and the Union." *Id.* We noted the effect of this language was that "while the benefits continue 'thereafter,' the parties may renegotiate to alter them or perhaps eliminate them altogether. But such action requires bilateral participation in the alteration or elimination of the benefits; it does not allow for unilateral action as Porter contends." *Id.*

The 2005 collective bargaining agreement between Volvo and the Union produced just this sort of arrangement. Modifications to retiree health benefits are permissible, even without the consent of each retiree. But Volvo cannot modify or terminate those benefits unless the conditions set forth in the Cost paragraph are met. In particular, Volvo must wait until the VEBA trust is projected to be exhausted within one year, and then must negotiate a plan with the Union to bring health costs down. Only if those negotiations fail or if the Union refuses to bargain may Volvo modify retiree health benefits by charging the retirees for excess healthcare costs according to a formula already determined by the parties in the 2005 CBA. Because none of those conditions were even plausibly

present when Volvo modified the benefits at issue in this case, the district court was correct to order Volvo to restore the benefits affected by Volvo's unilateral changes.*

IV.

If this were an employee welfare benefit plan that Volvo had voluntarily established under ERISA, Volvo's contention that the benefits do not extend past the term of the agreement would be much different. *See Gable v. Sweetheart Cup Co.*, 35 F.3d 851 (4th Cir. 1994). But because it is a collective bargaining agreement we are construing, the question is simple: what did the parties jointly intend? Here, the Cost provision clearly contemplates a mechanism that remains active beyond the expiration date of the agreement and therefore as a matter of law operates as a limitation on Volvo's right to modify retiree health benefits unilaterally. We accordingly affirm the judgment of the district court.

*AFFIRMED*

---

*Volvo also argues that the retirees' ERISA claim fails and that the retirees were not entitled to a jury trial on the LMRA claim. However, because we have already determined that the retirees are entitled to the relief they received below as a matter of law based on their LMRA claim, and because we "can affirm on any basis fairly supported by the record," *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 222 (4th Cir. 2002), we see no reason to overturn the judgment. We note that the district court awarded attorneys' fees to appellees, and given the intertwined nature of the various claims asserted, we see no basis to disturb the award in the circumstances herein presented.